UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | |
|---|---|
| VOTE.ORG,<br><br>　　　　　　Plaintiff,<br><br>　v.<br><br>JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator; BRUCE ELFANT, in his official capacity as the Travis County Tax Assessor-Collector; REMI GARZA, in his official capacity as the Cameron County Elections Administrator; MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator,<br><br>　　　　　　Defendants. | Civil Action<br><br>Case No. __5:21-cv-649__<br><br>Related to *Stringer, et al. v. Hughs, et al.*, No. 5:20-cv-00046-OLG<br><br>**COMPLAINT FOR DECLARATORY AND INJUNCTIVE RELIEF**<br><br>**52 U.S.C. § 10101 and the First and Fourteenth Amendments to the U.S. Constitution** |

Plaintiff VOTE.ORG, by and through its undersigned counsel, files this COMPLAINT for DECLARATORY and INJUNCTIVE RELIEF against Defendants JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator, BRUCE ELFANT, in his official capacity as the Travis County Tax Assessor-Collector, REMI GARZA, in his official capacity as the Cameron County Elections Administrator, and MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator, and alleges as follows:

**NATURE OF CASE**

1.　Registering to vote in Texas is a cumbersome process, and intentionally so. Despite a concerted effort to modernize election procedures, when it comes to voter registration—and, for that matter, other procedures that expand access to the franchise—Texas continues to embrace and reinforce antiquated rules that serve no purpose other than to make voting harder. For instance, Texas does not provide online registration, and for years the Secretary of State (the "Secretary")

ignored federal laws that require the State to allow voters to simultaneously update their driver's licenses and voter registration information.

2. This lawsuit challenges yet another outdated and unlawful voter registration rule. Under Texas law, voters must sign their registration applications with original, *wet* signatures (the "Wet Signature Rule")—a perplexing requirement given that the method by which a voter enters their signature has absolutely nothing to do with their eligibility to register.

3. In 2018, this antiquated rule resulted in the rejection of voter registration applications signed using a web application developed by Plaintiff Vote.org, simply because the applications were signed with imaged rather than wet signatures. Indeed, five days before the voter registration deadline for the 2018 midterm election, then-Secretary of State Roland Pablos instructed county registrars to reject all registration applications prepared using the e-signature function of Plaintiff's web application, claiming that the registration applications were incomplete because they lacked original, wet signatures.[1]

4. During the 2021 legislative session—mere months after Texas officials sought to overturn the 2020 presidential election results and disenfranchise millions of voters in *other states*, and on the heels of an election that the State's elections administrators described as safe and secure—the Texas Legislature codified the Wet Signature Rule through House Bill 3107 ("HB 3107"). *See* HB 3107, 87th Leg., Reg. Sess. (Tex. 2021).

5. HB 3107 provides that in order "[f]or a registration application submitted by telephonic facsimile machine to be effective, a copy of the *original* registration application

---

[1] The rule announced by Secretary Pablos was the subject of a lawsuit filed by the Texas Democratic Party, DSCC, and DCCC against the Secretary on January 6, 2020. *See* Compl. for Declaratory & Injunctive Relief, *Tex. Democratic Party v. Hughs*, No. 5:20-cv-00008-OLG (W.D. Tex. Jan. 6, 2020), ECF No. 1. That lawsuit was dismissed following the Fifth Circuit's determination that the claims against the Secretary were barred by sovereign immunity.

*containing the voter's original signature* must be submitted." *Id.* § 14 (amending Tex. Elec. Code § 13.143(d-2)). In other words, a voter cannot complete their registration form electronically, nor can they use an imaged signature; instead, the voter must provide a copy of their registration application with a wet-ink signature affixed.

6. For a bill that makes various upgrades to the Election Code—including allowing documents to be filed via e-mail, *see id.* § 1 (amending Tex. Elec. Code § 1.007(c))—the Wet Signature Rule is a conspicuous addition. It contradicts the State's longstanding recognition that electronic signatures carry the force of law, *see*, *e.g.*, Tex. Bus. & Com. Code § 322.007(d) ("If a law requires a signature, an electronic signature satisfies the law."), and is irreconcilable with the State's ongoing practice of accepting electronic or imaged signatures on voter registration applications submitted through state agencies.

7. Voters who renew their licenses or change their addresses through the Texas Department of Public Safety ("DPS"), for instance, can enter their signatures on electronic keypads; these signatures are then stored electronically, allowing DPS officials to piece together a voter registration application by combining the personal information populated on the renewal or change of address form with the voter's signature from the electronic file. This information, once compiled, becomes the voter's registration application and is approved if the applicant meets the eligibility requirements.

8. Thus, even with the Wet Signature Rule enshrined in the Election Code, thousands of Texans will continue to register at state agencies with imaged or electronic signatures, which undermines any suggestion that the Wet Signature Rule is somehow essential to protecting election integrity.

9. Instead, the Wet Signature Rule—from its inception at the Secretary's whim shortly before the 2018 midterm election to its codification through HB 3107—is an assault on innovative methods of expanding voter participation like the e-signature function of Plaintiff's web application.

10. The ability to complete and sign registration applications electronically is critical to ensure that voters with limited access to printers or mailing facilities, or who otherwise need assistance to register to vote, have meaningful opportunities to do so. The Wet Signature Rule imposes unnecessary roadblocks that are not only hopelessly out of step with other provisions of Texas law, but also create undue burdens for voters and the organizations that help them register, all while failing to advance any sufficiently weighty state interest that could justify such restrictions.

11. Accordingly, the Wet Signature Rule violates the U.S. Constitution and the federal Civil Rights Act by selectively targeting and burdening private organizations' efforts to increase voter turnout, and by imposing an arbitrary barrier to registration that has already denied many Texans the opportunity to vote for reasons entirely unrelated to their eligibility. For these reasons and those stated below, Plaintiff requests that the Court declare that the Wet Signature Rule violates the Civil Rights Act of 1964 and the First and Fourteenth Amendments to the U.S. Constitution, and enjoin Defendants from enforcing the Wet Signature Rule.

## JURISDICTION AND VENUE

12. Plaintiff brings this action under 52 U.S.C. § 10101 and 42 U.S.C. §§ 1983 and 1988 to redress the deprivation, under color of state law, of rights secured by the federal Civil Rights Act and the U.S. Constitution.

13. This Court has original jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331 and 1343 because the matters in controversy arise under the Constitution and laws

of the United States and involve the assertion of deprivation, under color of state law, of rights under the U.S. Constitution and federal law.

14. This Court has personal jurisdiction over Defendants, who are sued in their official capacities.

15. Venue is proper in this Court under 28 U.S.C. § 1391(b) because a substantial part of the events that give rise to Plaintiff's claims occurred and will occur in this judicial district.

16. This Court has the authority to enter declaratory judgment and provide injunctive relief under Federal Rules of Civil Procedure 57 and 65 and 28 U.S.C. §§ 2201 and 2202.

## PARTIES

17. Plaintiff Vote.org is the largest 501(c)(3) nonprofit, nonpartisan voter registration and get-out-the-vote ("GOTV") technology platform in the country. Vote.org uses technology to simplify political engagement, increase voter turnout, and strengthen American democracy. Vote.org works extensively to support low-propensity voters, including racial and ethnic minorities and younger voters who tend to have lower voter-turnout rates. In total, Vote.org has registered more than 6.7 million new voters and verified more than 16 million voters' registration statuses. Since 2012, it has helped over 776,000 Texans register to vote and 1.9 million Texans verify their registration statuses.

18. In preparation for the 2018 elections, Vote.org invested significant resources in developing and launching a web application that helped Texans complete their voter registration forms, just as it had done successfully in Alaska, Colorado, the District of Columbia, Kansas, and South Carolina. The e-signature function of Vote.org's web application allowed potential registrants in Bexar, Cameron, Dallas, and Travis Counties to enter information into a virtual voter registration application; sign the form by uploading an image of their signature into the web application; review their signed voter registration application; fax the completed application to

their county registrar; and generate a hard copy to be mailed to the county registrar, as required by Texas law.

19. Between late September and early October of 2018, more than 2,400 voters in Texas used Vote.org's web application, including the e-signature function, to complete their voter registration applications. Just five days before the registration deadline, Secretary Pablos called the validity of those 2,400 voter registrations into question. He claimed, without any basis in the law, that registration forms prepared using Vote.org's web application were invalid because they did not contain original, wet signatures. His announcement—and the decision of Texas counties to abide by it—effectively ended Vote.org's use of the e-signature function included in its voter registration web application.

20. Section 14 of HB 3107—the Wet Signature Rule—is simply a codification of the rule that Secretary Pablos devised in 2018. It continues to prevent Vote.org from making full use of one of its most effective tools: the e-signature function of its voter registration web application. No longer able to use features of its web application that it created specifically for Texas, Vote.org has been forced to divert resources from its general, nationwide operations—as well as its specific programs in other states—to redesign its Texas voter registration and GOTV programs and utilize more expensive (and less effective) means of achieving its voter registration goals in the State.

21. Defendant Jaquelyn Callanen is sued in her official capacity as the Bexar County Elections Administrator. In this capacity, she serves as the voter registrar for Bexar County and oversees its voter registration activities. *See* Tex. Elec. Code §§ 12.001, 13.004. 13.071–13.072, 15.022. This includes "review[ing] each submitted application for registration to determine whether it complies with Section 13.002" of the Election Code. *Id.* § 13.071; *see also id.* § 13.002

6

(enumerating registration application requirements). The Bexar County Elections Administrator is sued for the manner in which she enforces the Wet Signature Rule.

22.     Defendant Bruce Elfant is sued in his official capacity as the Travis County Tax Assessor-Collector. In this capacity, he serves as the voter registrar for Travis County and oversees its voter registration activities. *See id.* §§ 12.001, 13.004. 13.071–13.072, 15.022. This includes "review[ing] each submitted application for registration to determine whether it complies with Section 13.002" of the Election Code. *Id.* § 13.071; *see also id.* § 13.002 (enumerating registration application requirements). The Travis County Tax Assessor-Collector is sued for the manner in which he enforces the Wet Signature Rule.

23.     Defendant Remi Garza is sued in his official capacity as the Cameron County Elections Administrator. In this capacity, he serves as the voter registrar for Cameron County and oversees its voter registration activities. *See id.* §§ 12.001, 13.004. 13.071–13.072, 15.022. This includes "review[ing] each submitted application for registration to determine whether it complies with Section 13.002" of the Election Code. *Id.* § 13.071; *see also id.* § 13.002 (enumerating registration application requirements). The Cameron County Elections Administrator is sued for the manner in which he enforces the Wet Signature Rule.

24.     Defendant Michael Scarpello is sued in his official capacity as the Dallas County Elections Administrator. In this capacity, he serves as the voter registrar for Dallas County and oversees its voter registration activities. *See id.* §§ 12.001, 13.004. 13.071–13.072, 15.022. This includes "review[ing] each submitted application for registration to determine whether it complies with Section 13.002" of the Election Code. *Id.* § 13.071; *see also id.* § 13.002 (enumerating registration application requirements). The Dallas County Elections Administrator is sued for the manner in which he enforces the Wet Signature Rule.

**STATEMENT OF FACTS AND LAW**

25. Texas law provides several avenues through which eligible citizens may submit their voter registration applications to their county registrars: by personal delivery, mail, or fax. *See id.* § 13.002(a).

26. Prior to the enactment of the Wet Signature Rule, none of these options required a wet signature on a voter's registration application. Although a voter who chose to register by fax was required to mail a copy of the application to their registrar, the previous version of Section 13.143(d-2) did not require that the copy include an original, wet signature.

27. In 2018, Plaintiff deployed a web application to assist voters with completing their registration forms. As discussed above, five days before the registration deadline, Secretary Pablos indicated that any applications signed using Plaintiff's web application were invalid because every registration required an original, wet signature. A spokesperson for Secretary Pablos went so far as to declare that use of the web application's e-signature function to prepare voter registration applications was "illegal."

28. Secretary Pablos's announcement created confusion among Texas counties and voters, who were forced to reconcile the inherent conflict between the registration laws and the newly announced rule.

29. For example, the day after Secretary Pablos announced the Wet Signature Rule, the Travis County Tax Assessor-Collector said that he would process and accept registration applications without wet signatures despite the new rule. According to his legal counsel, state law allowed for copies of voter registration forms to be submitted without wet signatures. The next day, the Travis County Tax Assessor-Collector reversed course and claimed that between 400 and 500 applications submitted without wet signatures would be rejected. He also acknowledged that not all affected voters would be able to resubmit their applications and register before the deadline.

After much confusion and multiple conversations between county officials and Secretary Pablos, the Travis County Tax Assessor-Collector decided that he would accept the applications given the limited time remaining before the deadline, but would follow the new rule moving forward and reject any future applications without wet signatures.

30. In addition to its problematic inception, the Wet Signature Rule contradicts well-established federal and state laws that recognize the validity of electronic and other non-ink signatures.

31. For example, the Texas Administrative Code authorizes election officials to capture voters' signatures using electronic devices for election day signature rosters, and specifically defines "Electronic Signature" as "a digitized image of a handwritten signature." 1 Tex. Admin. Code § 81.58(a)–(b). The Texas Business and Commerce Code recognizes that a signature "may not be denied legal effect . . . solely because it is in electronic form" and expressly states that "[i]f a law requires a signature, an electronic signature satisfies the law." Tex. Bus. & Com. Code § 322.007(a), (d). And if a person completes a voter registration application through DPS, the agency must "inform the applicant that the applicant's electronic signature provided to the department will be used for submitting the applicant's voter registration application." Tex. Elec. Code § 20.066(a)(2).

32. The processing of voter registration applications through DPS underscores that the Wet Signature Rule serves no useful or justifiable purpose. DPS employs a system that, like Plaintiff's web application, allows voters to sign voter registration applications using electronically captured signatures. When an applicant interacts with DPS—whether by applying for or renewing a driver's license or changing their address—they complete the relevant DPS forms and sign an electronic keypad. The electronic keypad is just that: it is not a physical, paper form but rather a

9

separate electronic device with a space for an applicant to sign. DPS then captures and electronically stores the signatures entered into the keypad. *See Stringer v. Pablos*, 320 F. Supp. 3d 862, 872–74 (W.D. Tex. 2018), *rev'd and remanded on other grounds sub nom. Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019).

33. DPS reviews its own forms and selects information relevant to voter registration and then combines this information with the electronically stored signatures to create separate voter registration applications, which it then submits electronically to the Secretary's office. The Secretary then transmits the information to local registrars to complete the registration process. *See id.* at 872–73.

34. DPS applicants do not review or complete this voter registration application, nor do they ever physically sign the application form. *See id.* And DPS acknowledged in previous litigation that the information it transmits to the Secretary's office includes only a "digital image" of the applicant's signature taken from DPS forms. App. to Pls.' Mot. for Summ. J. at 117, *Stringer v. Pablos*, No. 5:16-cv-00257-OLG (W.D. Tex. June 30, 2017), ECF No. 77-1. An applicant's wet-ink signature on DPS's physical forms is not used for any purpose in the voter registration process. *Id.* at 39; *see also Stringer*, 320 F. Supp. 3d at 873.

35. In short, the inconsistency between DPS's practices and the Wet Signature Rule for faxed and mailed registration applications demonstrates that the latter serves no legitimate governmental interest—let alone an interest sufficiently weighty to justify the added burdens on voting—and is entirely unrelated to any determination of an individual's eligibility to register to vote.

36. For some eligible Texans, the burdens caused by the Wet Signature Rule will be insurmountable. In order to register under the Wet Signature Rule, a voter needs access to a printer

to print and sign an application. If the voter lacks access to a printer, then they must wait for local officials or another third party to provide a physical copy of the form for them to sign. For many voters—such as those whose local officials choose not to distribute applications, who do not have access to registrar's offices due to lack of transportation, or who live in rural areas outside the reach of third-party organizations—these options are insufficient and create unnecessary barriers to the franchise.

## CLAIMS FOR RELIEF

## COUNT I

### 52 U.S.C. § 10101; 42 U.S.C. § 1983
### Violation of Section 1971 of the Civil Rights Act of 1964
### Against All Defendants

37. Plaintiff realleges and reincorporates by reference all prior paragraphs of this Complaint and the paragraphs in the count below as though fully set forth herein.

38. Section 1971 of the Civil Rights Act of 1964 provides that

> [n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2).

39. The Wet Signature Rule is immaterial to determining whether an elector is qualified to vote in Texas. In prior litigation involving the State's voter registration procedures, the Secretary's office admitted that "it never uses physical, manual, or wet ink handwritten signatures on paper for voter registration purposes." *Stringer*, 320 F. Supp. 3d at 899. DPS utilizes electronic signatures for voter registration purposes. And Texas expressly permits election officials to collect electronic signatures for election day signature rosters.

40. Defendants' enforcement of the Wet Signature Rule will deprive Texans—including the voters that Plaintiff helps register—of the constitutional right to vote, as well as the rights secured to them by Section 1971 of the Civil Rights Act of 1964.

## COUNT II

### U.S. Const. Amends. I, XIV; 42 U.S.C. § 1983
### Undue Burden on the Right to Vote
### Against all Defendants

41. Plaintiff realleges and reincorporates by reference all prior paragraphs of this Complaint and the paragraphs below as though fully set forth herein.

42. Under the First and Fourteenth Amendments to the U.S. Constitution, a state cannot utilize election practices that unduly burden the right to vote.

43. When addressing a challenge to a state election practice, a court balances the character and magnitude of the burden that the challenged practice imposes on any First and Fourteenth Amendment rights the plaintiff seeks to vindicate against the justifications offered by the state in support of the challenged law. *See Burdick v. Takushi*, 504 U.S. 428, 434 (1992); *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983).

44. "However slight th[e] burden may appear . . . it must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation.'" *Crawford v. Marion Cnty. Election Bd.*, 553 U.S. 181, 191 (2008) (controlling op.) (quoting *Norman v. Reed*, 502 U.S. 279, 288–89 (1992)).

45. The Wet Signature Rule imposes yet another logistical hurdle that eligible Texans must navigate to exercise their most fundamental right. In order to register, a voter must have access to a printer (to print and sign their applications form) or wait for their local officials or another third party to provide a physical copy of the form for them to sign—and then must mail their original application form to their county registrar.

46. These additional procedural hurdles imposed by the Wet Signature Rule cannot be justified by any legitimate state interest. Texas statutes already recognize electronic signatures as legally binding. *See Stringer*, 320 F. Supp. 3d at 895–96. And election officials are not expected to, and typically do not, analyze or compare signatures on voter registration applications. *See id.* at 874.

47. The Wet Signature Rule thus furthers no legitimate governmental interest. Consequently, the burden it imposes on voters—including the voters that Plaintiff helps register—violates the First and Fourteenth Amendments to the U.S. Constitution.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff respectfully requests that this Court enter judgment:

a. Declaring that the Wet Signature Rule, as it appears in Section 14 of HB 3107 (amending Texas Election Code § 13.143(d-2)), and any other provisions requiring a voter to sign an application form with an original, wet signature in order to register to vote, violate Section 1971 of the Civil Rights Act of 1964 and the First and Fourteenth Amendments to the U.S. Constitution;

b. Preliminarily and permanently enjoining Defendants, their respective agents, officers, employees, and successors, and all persons acting in concert with each or any of them, from implementing, enforcing, or giving any effect to the Wet Signature Rule;

c. Awarding Plaintiff its costs, disbursements, and reasonable attorneys' fees incurred in bringing this action pursuant to 42 U.S.C. § 1988 and other applicable laws; and

d. Granting such other and further relief as the Court deems just and proper.

Dated: July 8, 2021.                                    Respectfully submitted,

/s/  John R. Hardin
John R. Hardin
Texas State Bar No. 24012784
**PERKINS COIE LLP**
500 North Akard Street, Suite 3300
Dallas, Texas 75201-3347
Telephone: (214) 965-7700
Facsimile: (214) 965-7799
johnhardin@perkinscoie.com

Uzoma N. Nkwonta*
Kathryn E. Yukevich*
**PERKINS COIE LLP**
700 Thirteenth Street NW, Suite 800
Washington, D.C. 20005-3960
Telephone: (202) 654-6200
Facsimile: (202) 654-9996
unkwonta@perkinscoie.com
kyukevich@perkinscoie.com

Jonathan P. Hawley*
**PERKINS COIE LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Telephone: (206) 359-8000
Facsimile: (206) 359-9000
jhawley@perkinscoie.com

*Counsel for Plaintiff*

**Pro Hac Vice* Application Forthcoming