**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

| | |
|---|---|
| VOTE.ORG,<br><br>               Plaintiff,<br><br>     v.<br><br>JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator; BRUCE ELFANT, in his official capacity as the Travis County Tax Assessor-Collector; REMI GARZA, in his official capacity as the Cameron County Elections Administrator; MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator,<br><br>               Defendants,<br><br>and<br><br>KEN PAXTON, in his official capacity as Attorney General of Texas, LUPE TORRES, in his official capacity as Medina County Elections Administrator; TERRIE PENDLEY, in her official capacity as Real County Tax Assessor-Collector,<br><br>               Intervenor-Defendants. | Civil Action<br><br><br>Case No. 5:21-cv-649-JKP-HJB |

**PLAINTIFF VOTE.ORG'S MOTION FOR SUMMARY JUDGMENT AND
MEMORANDUM OF LAW IN SUPPORT**

# TABLE OF CONTENTS

MOTION FOR SUMMARY JUDGMENT.................................................................. 1

STATEMENT OF GROUNDS AND CAUSES OF ACTION .................................... 1

INTRODUCTION ............................................................................................... 2

STANDARD OF REVIEW ................................................................................... 5

ARGUMENT ...................................................................................................... 6

    A.    Vote.org has standing because it has suffered a concrete injury as a direct result of the Wet Signature Rule, which is traceable to and redressable by Defendants. .........................................................................................................6

    B.    The Wet Signature Rule violates the Civil Rights Act because a wet signature is not material to determining an individual's eligibility to vote............................... 8

    C.    Because no sufficiently weighty state interest exists to justify the Wet Signature Rule, it is unconstitutional....................................................... 13

        1.    The Wet Signature Rule burdens the right to vote. ........................................ 14

        2.    Defendants identify no state interest advanced by the Wet Signature Rule that is sufficiently weighty to justify its burden on the right to vote. ........................................................................................................ 15

CONCLUSION.................................................................................................... 18

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Anderson v. Celebrezze,*
    460 U.S. 780 (1983) ...................................................................................15

*Anderson v. Liberty Lobby, Inc.,*
    477 U.S. 242 (1986) .....................................................................................5

*Anderson v. Morris,*
    636 F.2d 55 (4th Cir. 1980) .........................................................................18

*Bartee v. Bartee,*
    No. 11-18-0017-CV, 2020 WL 524909 (Tex. Ct. App. Jan. 31, 2020) ..........4

*Broad. Music, Inc. v. Bentley,*
    Civil Action No. SA-16-CV-394-XR, 2017 WL 782932 (W.D. Tex. Feb. 28,
    2017) ............................................................................................................5

*Burdick v. Takushi,*
    504 U.S. 428 (1992) ........................................................................13, 14, 15

*Democratic Exec. Comm. of Fla. v. Lee,*
    915 F.3d 1312 (11th Cir. 2019) .............................................................13, 17

*Diaz v. Cobb,*
    435 F. Supp. 2d 1206 (S.D. Fla. 2006) ......................................................8, 9

*Fla. Democratic Party v. Scott,*
    215 F. Supp. 3d 1250 (N.D. Fla. 2016).......................................................15

*Greidinger v. Davis,*
    988 F.2d 1344 (4th Cir. 1993) .....................................................................14

*Heinsohn v. Carabin & Shaw, P.C.,*
    832 F.3d 224 (5th Cir. 2016) .........................................................................5

*Lewis v. Hughs,*
    475 F. Supp. 3d 597 (W.D. Tex. 2020).........................................................7

*Lujan v. Defs. of Wildlife,*
    504 U.S. 555 (1992) ......................................................................................7

*Martin v. Crittenden,*
   347 F. Supp. 3d 1302 (N.D. Ga. 2018) ........................................................8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,*
   475 U.S. 574 (1986) ........................................................................................5

*Mi Familia Vota v. Abbott,*
   497 F. Supp. 3d 195 (W.D. Tex. 2020) ......................................................16

*Norman v. Reed,*
   502 U.S. 279 (1992) ......................................................................................13

*Obama for Am. v. Husted,*
   697 F.3d 423 (6th Cir. 2012) ......................................................................15

*Schwier v. Cox,*
   340 F.3d 1284 (11th Cir. 2003) ................................................................9, 12

*Schwier v. Cox,*
   412 F. Supp. 2d 1266 (N.D. Ga. 2005) ......................................................11

*Soltysik v. Padilla,*
   910 F.3d 438 (9th Cir. 2018) ......................................................................18

*Spokeo, Inc. v. Robins,*
   578 U.S. 330 (2016) ........................................................................................7

*Stringer v. Pablos,*
   320 F. Supp. 3d 862 (W.D. Tex. 2018) ......................................................10

*Stringer v. Pablos,*
   No. SA-16-CV-257-OG, 2020 WL 532937 (W.D. Tex. Jan. 30, 2020) ....14

*Tex. Indep. Party v. Kirk,*
   84 F.3d 178 (5th Cir. 1996) ........................................................................13

*Tolan v. Cotton,*
   572 U.S. 650 (2014) ........................................................................................5

*Wash. Ass'n of Churches v. Reed,*
   492 F. Supp. 2d 1264 (W.D. Wash. 2006) ................................................9, 12

**Statutes**

52 U.S.C. § 10101(a)(2)(B) ..............................................................................1, 4, 8

Tex. Bus. & Com. Code § 322.007(d) ..................................................................17

Tex. Elec. Code § 11.002 ...................................................................................9, 10

Tex. Elec. Code § 13.001 ........................................................................................9

Tex. Elec. Code § 20.066(a)(2) ............................................................................17

Tex. Health & Safety Code § 166.011 .....................................................................4

Tex. Prop. Code § 12.0013 ......................................................................................4

Texas Elec. Code § 13.143(d-2) .........................................................................1, 3

**Other Authorities**

Fed. R. Civ. P. 56(a) ...............................................................................................5

TO THE HONORABLE JASON PULLIAM:

## MOTION FOR SUMMARY JUDGMENT

Pursuant to Rule 56 of the Federal Rules of Civil Procedure and the Court's Standing Order governing motions for summary judgment, Plaintiff Vote.org ("Vote.org") respectfully moves for summary judgment as to Counts I and II of its Complaint (ECF No. 1) and asks the Court to enter an order enjoining Defendants and Intervenors from enforcing Section 14 of HB 3107, 87th Leg., Reg. Sess. (Tex. 2021), to reject voter registration applications that lack "original" or wet-ink signatures. In support of this Motion, Vote.org states as follows:

## STATEMENT OF GROUNDS AND CAUSES OF ACTION

Pursuant to Local Rule CV-7(C)(1) and Section 1(a)(1) of the Court's Standing Order in Civil Cases, Vote.org brings its Motion for Summary Judgment on Counts I and II of its Complaint and seeks to enjoin enforcement of Section 14 of HB 3107, 87th Leg., Reg. Sess. (Tex. 2021) (amending Texas Election Code § 13.143(d-2)) (hereinafter, the "Wet Signature Rule"). As set forth herein, the Wet Signature Rule requires all voters who submit applications by facsimile to also send a physical copy of the application form, signed with the voter's "original" (or wet-ink) signature, in order to complete the registration process.

Vote.org is entitled to judgment as a matter of law under Count I because the Wet Signature Rule violates Section 101 of the Civil Rights Act, 52 U.S.C. § 10101(a)(2)(B) (the "Materiality Provision"), by denying individuals the right to vote based on an error or omission—the failure to sign an application with a "wet" or "original" signature—that is not material in determining whether an individual is qualified to vote. Vote.org is also entitled to judgment as a matter of law

under Count II because the Wet Signature Rule imposes burdens on the right to vote that cannot be justified by a sufficiently weighty state interest.[1]

## INTRODUCTION

Each year, the State of Texas accepts tens of thousands of voter registration applications submitted through Department of Public Safety ("DPS") offices by combining applicants' personal information with an image of their signature affixed to the application form. In processing these applications, election officials do not use the signatures for identity verification; in fact, they do not inspect the signatures at all during the registration process, other than to confirm that they appear on the application. Like the forms submitted through DPS, election officials do not use the signatures on paper applications to verify eligibility; forms submitted directly from prospective voters are reviewed only to match a voter's personal identifying information with DPS records, or to confirm that a signature appears on the form, and nothing more. DPS applications and paper applications are similar in all material respects, with one exception: a recently enacted Texas law— Section 14 of HB 3107—now requires all voters who submit applications by facsimile to also send a physical copy of the application form, signed with the voter's "original" (or wet-ink) signature, in order to complete the registration process.

Vote.org, a non-profit 501(c)(3) organization, created a technology platform to simplify and streamline political engagement. One of its innovative tools is a web application that allows its users to complete a voter registration application digitally by uploading an image of their original signature onto an application form, after which the voter can arrange to have the form

---

[1] A Statement of Undisputed Material Facts in support of this Motion is attached as Exhibit 1. An Appendix of evidence supporting this Motion is attached as Exhibit 2.

printed, faxed, and mailed to their county registrar. In 2018, Vote.org launched its web application as a pilot program in Bexar, Travis, Cameron, and Dallas Counties ("Defendants")[2] with great excitement from election officials. But five days before the general election, the Secretary of State's Office ("the Secretary") issued a press release announcing that all paper application forms require a wet signature. At that time, there was no such statutory requirement in the Election Code, and at least one county continued to accept application forms with digital signatures. But shortly thereafter, the Secretary drafted and submitted proposed legislation to codify the Wet Signature Rule for the specific purpose of preventing further use of Vote.org's web application in Texas. The Legislature adopted the Secretary's proposal and enacted the requirement through Section 14 of HB 3107, which amended Texas Election Code § 13.143(d-2).

It is undisputed that the signatures on voter registration applications have no role in determining voter eligibility during the registration process,[3] and yet using an imaged—rather than wet-ink—signature on a paper application will result in rejection. *See*, *e.g.*, Garza Dep., at 85:17 – 88:18. No party has offered a logical explanation for this meaningless technicality. To the contrary, some Defendants have expressly admitted that "there is no practical purpose for requiring a wet-ink signatures [sic] as opposed to an electronic or imaged signature on voter registration applications, for purposes of registering an individual to vote . . . ." Scarpello Resp. to Pl.'s Interrog. No. 2 at 4 (Nov. 8, 2021); *see also* Elfant Resp. to Pl.'s Interrog. No. 2 at 7 (Oct. 29, 2021) ("Defendant Elfant is not aware of any difference in purpose or function between a 'wet

---

[2] Where used herein, "Intervenors" collectively refers to Ken Paxton, Lupe Torres and Terrie Pendley. The "State" refers to the State of Texas.

[3] *See, e.g.*, February 9, 2022 Deposition of Bruce Elfant ("Elfant Dep."), at 104:19-22, February 11, 2022 Deposition of Michael Scarpello ("Scarpello Dep."), at 77:4-6, and March 4, 2022 Deposition of Remi Garza ("Garza Dep."), at 103:19-22.

ink' signature and an electronic or imaged signature."). The Wet Signature Rule also serves no fraud-prevention interest because election officials do not inspect or compare signatures before adding individuals to the voter rolls; they spend mere "seconds" confirming simply that a signature is present. *See*, *e.g.*, February 2, 2022 Deposition of Jacquelyn Callanen ("Callanen Dep."), at 159:2-6; Garza Dep., at 107:17-108:1. And the State's proffered interest in preserving "the solemnity of voter registration," *see* Ken Paxton's Mot. to Dismiss (ECF No. 53), at 19, is incomprehensible considering the State's acceptance of imaged signatures on hundreds of thousands of voter registration applications submitted through DPS, and electronic signatures on numerous other "solemn" transactions, including executing an advance health directive, Tex. Health & Safety Code § 166.011, signing a divorce decree, *Bartee v. Bartee*, No. 11-18-0017-CV, 2020 WL 524909, at *3 (Tex. Ct. App. Jan. 31, 2020), and closing on real property. Tex. Prop. Code § 12.0013.

The voting process demands even stronger protections against unjustified burdens, and federal law prohibits election officials from imposing rules merely for the sake of rules. Accordingly, Vote.org brought this lawsuit under: (1) the Civil Rights Act of 1964, which forbids anyone from denying any individual the right to vote because of an error or omission in an application that is "*not material in determining whether such individual is qualified under State law to vote . . . .*" 52 U.S.C. § 10101(a)(2)(B) (emphasis added), and (2) the First and Fourteenth Amendments to the U.S. Constitution, which prohibit state or local officials from imposing burdens on the franchise that cannot be justified by a sufficiently weighty state interest. By Defendants' admissions, the Wet Signature Rule is a meaningless procedural hurdle for voter registration applicants; it cannot withstand scrutiny under either cause of action. Therefore, the

Court should grant Vote.org's Motion as to Counts I and II of its Complaint and enjoin enforcement of this arbitrary restriction on the right to vote.

## STANDARD OF REVIEW

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "material" only if it "might affect the outcome of the suit under the governing law." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute is "genuine" where "there is sufficient evidence favoring the nonmoving party" to support a verdict for that party. *Id.* at 249. While all evidence and reasonable inferences are viewed in the light most favorable to the nonmovant, and all disputed facts are resolved in favor of the nonmovant, the judge's function "is not 'to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial.'" *Tolan v. Cotton*, 572 U.S. 650, 656 (2014) (quoting *Anderson*, 477 U.S. at 249).

Once the moving party has met its burden, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the *material* facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (emphasis added). "Unsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Heinsohn v. Carabin & Shaw, P.C.*, 832 F.3d 224, 226 (5th Cir. 2016). The nonmoving party must identify specific facts that show a genuine dispute for trial. *Matsushita*, 475 U.S. at 587. Should the nonmoving party fail "to address or respond to a fact raised by the moving party and supported by evidence, then the court may consider the fact as undisputed" and "[s]uch undisputed facts may form the basis for a summary judgment." *Broad. Music, Inc. v. Bentley*, Civil

Action No. SA-16-CV-394-XR, 2017 WL 782932, at *2 (W.D. Tex. Feb. 28, 2017). Vote.org satisfies this burden and is entitled to judgment as a matter of law.

## ARGUMENT

This Motion asks three simple questions: *First*, does Vote.org have standing to challenge the Wet Signature Rule? It does. The undisputed evidence shows that the Wet Signature Rule was promulgated in response to Vote.org's web application, and forced Vote.org to divert resources in order to advance its mission in Texas. Consequently, Vote.org has suffered an injury in fact that is caused by the law, directly traceable to Defendants' enforcement of the law, and redressable by granting this Motion and the requested injunction. *Second*, is an "original," wet-ink signature on a voter registration application material to determining voter eligibility? It is not. Defendants concede that original, wet-ink signatures are not used for any purpose in the registration process other than to confirm an application is complete, and the original paper applications are either destroyed once scanned or filed away. *Third*, does the Wet Signature Rule advance a sufficiently weighty state interest to justify the burden it imposes on the right to vote? It does not. The undisputed evidence shows there is no interest—much less one sufficiently weighty to justify its burdens—that is advanced by demanding "original," wet-ink signatures from a subset of voters while accepting imaged signatures from other applicants. And because there is no genuine issue of material fact as to these questions, Vote.org is entitled to judgment as a matter of law on Counts I and II of its Complaint.

### A. Vote.org has standing because it has suffered a concrete injury as a direct result of the Wet Signature Rule, which is traceable to and redressable by Defendants.

To establish standing, a plaintiff "must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a

favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016). Vote.org satisfies all three requirements.

First, Vote.org satisfies the "injury in fact" requirement because it invested substantial resources in developing a web application to simplify the process of completing voter registration forms, but is precluded by Texas law from using a critical feature of that web application—the e-sign function, which allows voters to upload an image of their signature onto the application form. *See* February 10, 2022 Deposition of Andrea Hailey ("Hailey Dep."), at 51:14-53:1, 108:12-24. As a result, Vote.org has to divert its limited staff resources and time from other voter engagement efforts, both in Texas and across the country, to reconfigure the web application and find alternative, less efficient ways to help voters navigate registration requirements and develop other platforms to encourage political participation. *See, e.g.*, *id*. at 108:25-110:13, 137:18-142:4, 297:23-299:9. Vote.org has thus suffered an "invasion of a legally protected interest" that is "concrete and particularized" and "actual or imminent, not 'conjectural' or 'hypothetical,'" *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (quoting *Whitmore v. Arkansas,* 495 U.S. 149, 155 (1990)), and was forced to "divert resources from its usual activities in order to lessen the challenged restriction's harm to its mission." *Lewis v. Hughes*, 475 F. Supp. 3d 597, 612 (W.D. Tex. 2020) (citing *Havens Realty Corp. v. Coleman*, 455 U.S. 363, 379 (1982)), *rev'd and remanded on other grounds sub nom. Lewis v. Scott*, 28 F.4th 659 (5th Cir. 2022). In fact, the Secretary's office, which drafted Section 14 of HB 3107, testified that it included the Wet Signature Rule specifically to frustrate the use of Vote.org's web application. Ingram Dep., at 102:3-14, 103:13-104:8.

Second, Vote.org's injuries are "fairly traceable to the challenged conduct" of the Defendants—namely, their enforcement of the Wet Signature Rule pursuant to Section 14 of HB

3107, which precludes them from accepting voter registration applications that are signed with imaged signatures. Elfant Resp. to Pl.'s Reqs. for Admis. Nos. 1 & 2; Pendley Resp. to Pl.'s Reqs. for Admis. No. 2; Torres Resp. to Pl.'s Reqs. for Admis. No. 2; Scarpello Resp. to Pl.'s Reqs. for Admis. Nos. 1 & 2; State Resp. to Pl.'s Reqs. for Admis. Nos. 1 & 2.

Third, Vote.org's injury will be redressed by a favorable decision of this Court enjoining enforcement of the Wet Signature Rule. Without the law, at least some counties, if not all, would accept and process applications signed with imaged signatures, Scarpello Dep., at 63:18-64:1; 64:7-12; 96:3-17; 152:5-153:5; Elfant Dep., at 146:5-15, which would allow Vote.org to enable the e-sign function of its web application. Hailey Dep., at 80:24-81:10. Thus, Vote.org has standing to bring this lawsuit.

### B. The Wet Signature Rule violates the Civil Rights Act because a wet signature is not material to determining an individual's eligibility to vote.

Section 101 of the Civil Rights Act provides that "[n]o person acting under color of law shall[] . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is *not material in determining whether such individual is qualified under State law to vote* in such election." 52 U.S.C. § 10101(a)(2)(B) (emphasis added). "There are two types of non-material omissions possible under the [Civil Rights Act]: (1) failure to provide information, such as race or social security number, that is not directly relevant to the question of eligibility; and (2) failure to follow needlessly technical instructions, such as the color of ink to use in filling out the form." *Diaz v. Cobb*, 435 F. Supp. 2d 1206, 1213 (S.D. Fla. 2006) (finding question regarding mental capacity or felony conviction material because both were qualifications for voting); *see also Martin v. Crittenden*, 347 F. Supp. 3d 1302, 1309 (N.D. Ga. 2018) (finding

requirement of elector's date of birth on absentee ballot not material); *Wash. Ass'n of Churches v. Reed*, 492 F. Supp. 2d 1264, 1270 (W.D. Wash. 2006) (finding required disclosure of social security number not "material" because it did not establish requirements for eligibility to vote). Both categories of requirements are unlawful because the Materiality Provision "was intended to address the practice" of demanding "unnecessary information for voter registration." *Schwier v. Cox*, 340 F.3d 1284, 1294 (11th Cir. 2003). The Wet Signature Rule is no different: the specific instrument an applicant uses to enter their signature is irrelevant in determining whether they are qualified to vote. *Cf. Diaz*, 435 F. Supp. 2d at 1213 (suggesting use of "wrong" color of ink on form is not material).

The term "qualified under State law to vote" in the context of the Materiality Provision refers to the state's statutory or constitutional requirements for voting. *See Schwier*, 340 F.3d at 1297; *Reed*, 492 F. Supp. 2d at 1270 (looking to state constitution's voter eligibility requirements). If the required information is not "directly relevant" to the State's ability to verify that a voter meets those qualifications, it is not "material." *Diaz*, 435 F. Supp. 2d at 1213. A person is "qualified" to vote under Texas law if they are (1) "18 years of age or older"; (2) "a United States citizen"; (3) not "totally mentally incapacitated" or "partially mentally incapacitated without the right to vote"; (4) "ha[ve] not been finally convicted of a felony or, if so convicted" have "fully discharged [their] sentence" or "been pardoned or otherwise released from the resulting disability to vote"; (5) "a resident of this state"; and (6) a "registered voter." Tex. Elec. Code § 11.002.[4]

---

[4] A person is "eligible for registration as a voter" if they meet the same requirements, with three minor differences: (1) they must be at least 17 years and 10 months of age at the time the application is submitted; (2) they must be a "resident of the county in which application for registration is made"; and (3) they need not already be a registered voter. Tex. Elec. Code § 13.001.

The method by which an applicant enters their signature (*i.e.*, in wet ink or digitally) is irrelevant to the State's requirements. No state actor involved at any stage of the voter registration process uses a voter's "wet" signature to verify eligibility to vote. *E.g.*, State Resp. to Pl.'s Req. for Admis. No. 4. For example, when an applicant attempts to register, the Secretary checks that individual's "last name, the date of birth, and whatever number provided, either their driver's license number or [S]ocial [Security number]" against the information in the DPS database. *See* March 4, 2022 Deposition of Keith Ingram ("Ingram Dep."), at 70:6-71:17. If those fields match, the voter is assigned a voter-unique identifier. *Id*. Neither the Secretary nor Defendants use a "wet" signature to determine eligibility to vote. Elfant Dep., at 107:13-108:17, 109:22-110:8. In fact, the Secretary's office does not even have access to the registrant's "wet" signature: Defendants do not provide or make available any voter's signature to the State. *See* February 23, 2022 Deposition of Lupe Torres ("Torres Dep."), at 44:19-45:14, 70:5-8; February 25, 2022 Deposition of Terrie Pendley ("Pendley Dep."), at 50:14-51:5, 52:16-53:5, 75:5-16; Ingram Dep., at 74:1-13. The only signatures the State sees are imaged signatures provided with applications completed through DPS. Ingram Dep., at 81:8-22; Callanen Dep., at 131:8-14; Elfant Dep., at 103:15-104:9. Even then, no one in the Secretary's office looks at those signatures. Ingram Dep., at 82:1-3. Indeed, the State has conceded in other litigation that "electronic signatures comply with signature requirements under the NVRA," and that the State "never uses physical, manual, or wet ink handwritten signatures on paper for voter registration purposes." *Stringer v. Pablos*, 320 F. Supp. 3d 862, 899 (W.D. Tex. 2018), *rev'd on other grounds and remanded sub nom. Stringer v. Whitley*, 942 F.3d 715 (5th Cir. 2019).

Defendants also concede that their only use for a signature on a voter registration application is to verify that it exists. Torres Dep., at 68:3-14; Pendley Dep., at 71:18-72:2, 85:21-

86:9; Scarpello Dep., at 74:20-75:9, 76:19-22, 85:19-86:6; Elfant Dep., at 129:10-21. Defendants

do not use the signatures for identity verification during the registration process. Scarpello Dep.,

at 77:4-6; Torres Dep., at 61:13-22; Scarpello Dep., at 75:8-9, Elfant Dep., at 104:19-22. And even

if they did, an imaged signature serves every purpose that a "wet" signature does. Elfant Resp. to

Pl.'s Interrog. No. 2 at 7 (Oct. 29, 2021) ("Defendant Elfant is not aware of any difference in

purpose or function between a 'wet ink' signature and an electronic or imaged signature."); 

Scarpello Resp. to Pl.'s Interrog. No. 2 at 4 (Nov. 8, 2021) ("[T]here is no practical purpose for

requiring a wet-ink signatures [sic] as opposed to an electronic or imaged signature on voter

registration applications, for purposes of registering an individual to vote . . . ."); Torres Dep., at

77:4-9. In fact, Defendants receive and process thousands of voter registration applications through

DPS each year, *e.g.*, Torres Resp. to Pl.'s Interrog. No. 6, Garza Resp. to Pl.'s Interrog. No. 7, all

of which contain electronic (not "wet") signatures, Callanen Dep., at 132:3-5, Scarpello Dep., at

60:6-8, Elfant Dep., at 104:5-14, and treat them with no greater scrutiny than they do applications

with "wet" signatures. *See* Elfant Resp. to Pl.'s Reqs. for Admis. No. 3; Pendley Resp. to Pl.'s

Reqs. for Admis. No. 3; Torres Resp. to Pl.'s Reqs. for Admis. No. 3; Scarpello Resp. to Pl.'s

Reqs. for Admis. No. 3; State Resp. to Pl.'s Reqs. for Admis. No. 3.

Defendants have previously argued that the Wet Signature Rule helps prevent "fraud." *E.g.*,

Intervenor-Defendant Ken Paxton's Mot. to Dismiss (ECF No. 53), at 18. This is unpersuasive for

several reasons. First, regardless of whether it is true (it is not), preventing "fraud" does not render

a requirement "material" under the Materiality Provision. *Schwier v. Cox*, 412 F. Supp. 2d 1266,

1276 (N.D. Ga. 2005), *aff'd*, 439 F.3d 1285 (11th Cir. 2006) (finding that role of mandatory

disclosure of social security number in preventing "fraud" did not render requirement material);

*Reed*, 492 F. Supp. 2d at 1270 (following *Schwier* to find that requirement's function of preventing fraud did not render requirement "material").

Second, Defendants do not use the "wet" or "original" signature—or any signature—to detect "fraud" in voter registration, nor could they. Instead, Defendants claim they use the signature to detect fraudulent *voting* in the unlikely event of an investigation or audit. But the registrant's application signature is only one of several others to which the ballot signature may be compared and is only sometimes used. Scarpello Dep., at 84:3-85:1; Pendley Dep., at 70:14-18, 71:18-21. Nonetheless, even in this unlikely scenario, an imaged signature serves the same purpose as a wet signature: most Defendants compare two digital versions of a voter's signature; they do not use any "wet" signature. Scarpello Dep., at 153:17-154:3; Callanen Dep., at 134:16-136:6, 140:1-12; Elfant Dep., at 253:10-16; Torres Dep., at 75:6-22.

Third, the notion that the Wet Signature Rule reduces fraud is speculative. Defendants have spoken to no experts on the subject, Torres Dep. at 97:20-98:1; Pendley Dep., at 102:6-9; Ingram Dep., at 213:16-214:5; they have conducted no independent research, Torres Dep., at 98:2-4; Pendley Dep., at 102:10-17; Ingram Dep., at 212:4-213:1; they have no direct experience to support the claim, Torres Dep., at 98:5-8; Pendley Dep., at 102:18-22; and they are aware of no instances in which an electronic signature was used fraudulently on a voter registration application. Torres Dep., at 98:10-13, 98:21-99:8; Pendley Dep., at 103:1-12, 104:2-12; Ingram Dep., at 218:13-219:5.

In sum, a "wet" or "original" signature on a voter registration application is not material to the requirements for voter eligibility under Texas state law. It does not demonstrate the age of an applicant, the applicant's U.S. citizenship, the length of time the applicant has resided in Texas or a county, or the applicant's criminal status. No Defendant uses it to verify an applicant's identity

12

during the registration process. And while the State insists—with no evidence—that the requirement eventually militates against fraud, as a matter of law, that has no bearing on whether the Wet Signature Rule is material in determining an applicant's *eligibility to vote*. It therefore violates the Materiality Provision and must be enjoined.

### C. Because no sufficiently weighty state interest exists to justify the Wet Signature Rule, it is unconstitutional.

The Wet Signature Rule is not only immaterial to an individual's qualification to vote, it imposes unnecessary obstacles in the registration process—particularly for individuals who lack access to printers—and unduly burdens the rights of Texas voters, while advancing no state interest that is sufficiently weighty to justify this burden; thus it violates the First and Fourteenth Amendments to the United States Constitution.

To determine whether a state law imposes an undue burden on the right to vote in violation of the First and Fourteenth Amendments, federal courts apply the *Anderson-Burdick* balancing test, which "weigh[s] 'the character and magnitude of the asserted injury' . . . against 'the precise interests put forward by the State as justifications for the burden imposed by its rule.'" *Burdick v. Takushi*, 504 U.S. 428, 434 (1992) (quoting *Anderson v. Celebrezze*, 460 U.S. 780, 789 (1983)). When the burden is severe, the state's asserted interest must be compelling, and the challenged restriction must be narrowly tailored to advance it. *Tex. Indep. Party v. Kirk*, 84 F.3d 178, 182 (5th Cir. 1996). But even if the burden is less than severe, the challenged restriction must be supported by "interest[s] sufficiently weighty to justify the limitation." *Norman v. Reed*, 502 U.S. 279, 288-89 (1992); *see also Democratic Exec. Comm. of Fla. v. Lee*, 915 F.3d 1312, 1318-19 (11th Cir. 2019) ("[E]ven when a law imposes only a slight burden on the right to vote, relevant and legitimate interests of sufficient weight still must justify that burden."). Thus, for all burdens,

13

however slight, the Court must take "into consideration 'the extent to which [the State's] interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Because the Wet Signature Rule does not advance any interest sufficiently weighty to justify the burdens it imposes on the right to vote, the Court must enjoin its enforcement.

## 1. The Wet Signature Rule burdens the right to vote.

The Wet Signature Rule imposes an unmistakable burden on Texans attempting to register to vote. Because paper applications must be signed in wet ink, a potential applicant must obtain a physical copy of a voter registration form. For Texans who do not have printers at home, this requirement imposes additional steps to the application process, as they must find a third party who will either provide access to a printer or allow them to print an application form. *See* December 13, 2021 Expert Report of Dr. Lisa Bryant ("Bryant Rep.") at 11-13. Dr. Lisa Bryant explained that this burden "disproportionately falls on younger, lower-income, and minority voters who are more likely to be smartphone dependent and have limited access to computers or other devices or office equipment that would facilitate compliance with the wet signature rule." *Id.* at 2, 4-5, 7-8. And while prospective voters may travel to their county officials' offices to request an application form, or find a voter registration drive distributing the forms, or even request a form in the mail, each of these options imposes additional logistical hurdles.

There can be no dispute that adding procedural hoops to the registration process burdens the right to vote. *See, e.g.*, *Stringer v. Pablos*, No. SA-16-CV-257-OG, 2020 WL 532937, at *7 (W.D. Tex. Jan. 30, 2020) (finding that restriction on voter registration imposes a burden on the fundamental right to vote); *Greidinger v. Davis*, 988 F.2d 1344, 1354 (4th Cir. 1993) (holding plaintiff's right to vote was "substantially burdened" by state voter registration law). Indeed, when asked by Intervenor-Defendant Ken Paxton whether the Wet Signature Rule makes it harder for

someone to vote in Texas, Defendant Scarpello responded in the affirmative and explained: "[i]f you can't register to vote, you can't vote. [The Wet Signature Rule] makes it harder to register to vote . . . [particularly] [s]omeone who sends in an electronic copy of a registration, who wants -- who wants to send in an electronic copy of a voter registration." Scarpello Dep., at 101:2-8.

2. **Defendants identify no state interest advanced by the Wet Signature Rule that is sufficiently weighty to justify its burden on the right to vote.**

No party to this action has advanced a sufficiently weighty state interest that can justify the burden imposed by the Wet Signature Rule. In assessing this claim, the Court must weigh the burden on voters against "the precise interests put forward by the State as justifications" for the law. *Burdick*, 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at 789). Even the slightest burdens on the right to vote "must be justified by relevant and legitimate state interests 'sufficiently weighty to justify the limitation,'" *Fla. Democratic Party v. Scott*, 215 F. Supp. 3d 1250, 1256–57 (N.D. Fla. 2016) (quoting *Common Cause/Ga. v. Billups*, 554 F.3d 1340, 1352 (11th Cir. 2009)), and no matter the magnitude of the burden the Court must take "into consideration 'the extent to which [the State's] interests make it necessary to burden the plaintiff's rights.'" *Burdick*, 504 U.S. at 434 (quoting *Anderson*, 460 U.S. at 789). Stated differently, the State must demonstrate why it can accept imaged signatures from hundreds of thousands of voters—specifically, voters who register through DPS—while demanding wet signatures from others. *See*, *e.g.*, *Obama for Am. v. Husted*, 697 F.3d 423, 434 (6th Cir. 2012) (finding "no corresponding satisfactory reason to prevent non-military voters from casting their ballots" in the same manner as military service members and their families); *see also Anderson*, 460 U.S. at 805 (rejecting state's justification for the law where the law's impact was both too broad and too narrow to serve that interest).

The State has previously offered three purported justifications for the Wet Signature Rule, all of which are unavailing. First, the State argued that the burden imposed by the law is either nonexistent or minimal. But there is no genuine dispute that the Wet Signature Rule requires some voters to navigate additional logistical hurdles in order to hand-sign a physical copy of their application in wet ink—rather than signing it digitally, consistent with common practice for other important transactions—or risk disenfranchisement. *See* Bryant Dep., at 104:19-105:25; Garza Dep., at 93:4-12 (discussing complaints from voters regarding how it is "difficult to register to vote in Texas"). That the burden may not impact *every* voter does not eliminate the State's obligation to identify an interest sufficiently weighty to justify the law.

Second, as it did in its failed motion to dismiss, the State may argue once again that "Texas provides voters with multiple methods by which to register." Mot. to Dismiss (ECF No. 53), at 16. But this Court has made clear that the availability of alternate means of registering to vote do not "eliminate or render harmless" the burdens imposed by a restriction on the right to vote. *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 219 (W.D. Tex. 2020) (quoting *Deerfield Med. Ctr. v. City of Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981)).

Third, the State has speculated that the Wet Signature Rule helps combat voter fraud and promotes "election integrity" or "solemnity" in the voter registration process. Mot. to Dismiss (ECF No. 53), at 19. But the undisputed evidence rejects this theory. As explained above, Defendants concede that they do not use the signatures for any purpose in the registration process, *see supra* pp. 11-12, but even if they did, an imaged signature would serve the same purpose as a wet-ink or copy of an "original" signature because signature comparisons often occur using digital

*images* of the relevant samples. *See supra* p. 12.[5] And Defendants are unaware of any voter fraud related to wet, imaged, digital, or electronic signatures. *See*, *e.g.*, Garza Dep., at 117:1-14. That is consistent with Dr. Bryant's analysis. She explained that "the wet signature rule does not make voter rolls more accurate or elections more secure, but the additional burdens and costs it imposes fall most heavily on those who are least equipped to overcome these unnecessary hurdles in the voting process." Bryant Rep. at 20. In fact, the Secretary testified that the only major or recurring issue related to voter registration signatures was "storage capacity" within the Texas Election Administration Management ("TEAM") system. Ingram Dep., at 214:17-215:1.

Finally, the State's purported interest in maintaining solemnity is not only speculative and impermissibly vague, but it is also unrelated to the Wet Signature Rule. Texas law permits—and even encourages—the use of electronic signatures in various other "solemn" activities and transactions, including voter registration when submitted through DPS.[6] *See, e.g.*, Tex. Elec. Code § 20.066(a)(2) (requiring DPS to notify registrants their electronic signature will be used for their registration application); *see also* Tex. Bus. & Com. Code § 322.007(d) ("If a law requires a

_____

[5] The arbitrary application inherent with signature matching makes the State's position even more tenuous and problematic. For instance, because there are no guidelines that inform an election official's determination that a signature was not applied with wet-ink, voters' applications may be rejected erroneously and arbitrarily. *See, e.g.*, *Democratic Exec. Comm. of Fla.*, 915 F.3d at 1321 (finding that Florida's signature-matching requirement "impose[d] . . . a serious burden on the right to vote" in part because of the lack of uniformity in the application of the signature match requirement among county election officials).

[6] For the purposes of registering to vote, there is no functional difference between applying in person at a DPS office and submitting a voter registration application by facsimile using Vote.org's web application. *See, e.g.*, Mot. to Dismiss (ECF No. 53), at 19-20. Defendants do not use the signatures submitted with either application to verify a voter's identify as part of the registration process. *See, e.g.*, Elfant Dep., at 104:19-22, Scarpello Dep., at 77:4-6, and Garza Dep., at 103:19-22.

signature, an electronic signature satisfies the law."). And the State has yet to explain why a wet signature is more solemn than an imaged one.

Defendants cannot survive the Court's scrutiny by merely brainstorming interests; the challenged restriction must *actually advance* the State's purported goal. *Soltysik v. Padilla*, 910 F.3d 438, 447 (9th Cir. 2018) (noting even a legitimate, "important government interest," could not justify the burden imposed because the court "struggle[d] to understand how [the challenged] regime . . . advance[d] that goal."); *Anderson v. Morris*, 636 F.2d 55, 58 (4th Cir. 1980). As Defendant Scarpello conceded, there are "no practical interests" served by "Section 14 of HB 3107." Scarpello Resp. to Pl.'s Interrog. No. 3 at 5. Because there is no dispute that the Wet Signature Rule fails to advance a sufficiently weighty interest that would justify its burden on the right to vote, it violates the First and Fourteenth Amendments and must be enjoined.

## CONCLUSION

For all the foregoing reasons, Vote.org is entitled to judgment as a matter of law on Counts I and II of the Complaint.

Dated: April 8, 2022                               Respectfully submitted,

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta*
Joshua L. Harris*
Noah B. Baron*
Alexander F. Atkins*
Meaghan M. Mixon*
**ELIAS LAW GROUP LLP**
10 G Street NE, Suite 600
Washington, D.C. 20002
Telephone: (202) 968-4490
unkwonta@elias.law
jharris@elias.law
nbaron@elias.law
aatkins@elias.law
mmixon@elias.law

*Counsel for Plaintiff Vote.org*
*Admitted *Pro Hac Vice*

**CERTIFICATE OF COMPLIANCE**

Pursuant to Local Rule CV-7(D)(2), counsel for Plaintiff certifies that this motion does not exceed twenty (20) pages, exclusive of the caption, the signature block, any certificate, and any accompanying documents.

/s/ Uzoma N. Nkwonta
Uzoma N. Nkwonta