**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**SAN ANTONIO DIVISION**

**VOTE.ORG,**

   *Plaintiff,*

**v.**                                      **Case No.  SA-21-CV-00649-JKP**

**JACQUELYN CALLANEN, in her official capacity as the Bexar County Elections Administrator; BRUCE ELFANT, in his official capacity as the Travis County Tax Assessor-Collector; REMI GARZA, in his official capacity as the Cameron County Elections Administrator; and MICHAEL SCARPELLO, in his official capacity as the Dallas County Elections Administrator;**

   *Defendants,*

**KEN PAXTON, in his official capacity as the Attorney General of Texas, LUPE C. TORRES, in his official capacity as the Medina County Elections Administrator; TERRIE PENDLEY, in her official capacity as the Real County Tax Assessor-Collector**

*Intervenor Defendants.*

**MEMORANDUM OPINION AND ORDER**

     Before the Court are Plaintiff Vote.org's Motion for Summary Judgment and Defendants' and Intervenor Defendants' (collectively referred to as "Texas" because these parties are all representatives of the state) Motions for Summary Judgment, and the responsive filings. *ECF Nos. 108, 109, 111, 120, 121, 122, 124, 128, 132, 134*. Upon consideration, the Court concludes

Vote.org has standing to assert the causes of action raised and to bring this action. The Court concludes Texas's Motions for Summary Judgement *(ECF Nos. 108, 109)* are DENIED. Vote.org's Motion for Summary Judgment *(ECF No. 111)* is GRANTED. Vote.org's request for permanent injunction is GRANTED, and Vote.org's request for declaratory relief is GRANTED IN PART.

The Court declares the provision contained in Texas Election Code § 13.143(d-2) that requires "a copy of the original registration application *containing the voter's original signature* must be submitted by personal delivery or mail" violates Section 1971 of the Civil Rights Act and violates the First and Fourteenth Amendments of the U.S. Constitution by placing an undue burden on Texas citizens' right to vote. Vote.org's request for declaratory relief that "any other provision which requires a voter to sign an application form with an original, wet signature in order to register to vote" violates the Civil Rights Act and the First and Fourteenth Amendment is denied.

## UNDISPUTED FACTUAL BACKGROUND

The facts underlying this action are primarily undisputed. Vote.org is a nonprofit, nonpartisan organization. Vote.org's mission and outreach activities include: (1) use technology to simplify political engagement, increase voter turnout, and strengthen American democracy; (2) work to support low-propensity voters, including racial and ethnic minorities and younger voters who tend to have lower voter-turnout rates; and (3) help Texans register to vote and verify registration status. The named Defendants serve as voter registrars and oversee voter registration activities in Texas.

To assist voters in completing voter registration applications, Vote.org developed and launched an application ("web app") accessed by computer or smartphone. By accessing Vote.org's web app, a prospective voter registrant can submit their required information through prompts. This information is then auto-populated into an electronic version of the federal voter registration form. The prospective voter registrant then signs a piece of paper, takes a picture of the signature, and uploads that picture to the web app. The web app affixes the signature to the populated electronic voter registration form and sends this form to a third-party vendor. The third-party vendor then "faxes" the voter registration form to the registrant's appropriate county registrar.[1]

In October 2018, Secretary of State Pablo independently questioned the validity of the voter registration forms submitted by telephonic facsimile using Vote.org's web app on the basis the registration forms were not "signed by the applicant" as required by the Texas Elections Code because the submissions contained a graphic image, or "electronic" signature, not an original, "wet signature." Thus, Secretary Pablo deemed the voter registration forms incomplete because they lacked original, wet signatures. Upon Secretary Pablo's instruction, Texas Elections Administrators rejected all voter registration forms submitted that included only an electronic signature, effectively ending Vote.org's use of the web app.

Thereafter, Section 14 of House Bill 3107 (HB 3107) was codified during the 2021 legislative session. HB 3107 §14, 87th Leg., Reg. Sess. (Tex. 2021). HB 3107 amended Texas Election Code Section 13.143, among others, by adding the original, "wet signature" requirement to Section 13.143(d-2), which states, as amended, "[f]or a registration application submitted by telephonic facsimile machine to be effective, a copy of the original registration application *contain-*

---

[1] The form of submission used by the third-party vendor is not clear from the record, i.e. whether the document is printed and sent by telephonic facsimile machine, or whether the electronic version is sent by email. However, this distinction is not relevant to the Court's substantive determination herein.

*ing the voter's original signature* must be submitted by personal delivery or mail and be received by the registrar not later than the fourth business day after the transmission by telephonic facsimile machine is received." Tex. Elec. Code Ann. § 13.143(d-2)(2021)("the Wet Signature Rule")(emphasis added to designate amendment).[2] Upon receipt of the printed, signed copy, the previous telephonic-facsimile submission is deemed "complete," with no further discretionary review. *Id*. If the printed version with the wet signature is not received within four business days, the telephonic-facsimile submission is deemed incomplete and rejected. If a voter registration form is rejected for any reason, the registrar or Elections Administrator must send a notice of incomplete-ness to the registrant and permit the registrant to resubmit another voter registration form curing the deficiencies. Tex. Elec. Code Ann. § 13.073 (2003).

Vote.org brought this action on July 8, 2021. In its Complaint seeking declaratory and injunctive relief, Vote.org specifically challenges § 13.143(d-2) of the Texas Election Code (the Wet Signature Rule).[3] Vote.org alleges the addition of the Wet Signature Rule unlawfully targets and burdens its efforts to increase voter turnout by imposing an arbitrary barrier to registration that denies citizens the opportunity to vote for reasons entirely unrelated to their eligibility to vote. On this basis, Vote.org asserts two causes of action. First, Vote.org alleges the Wet Signature Rule violates § 1971 of the Civil Rights Act of 1964, codified at 52 U.S.C. § 10101(a)(2) (for clarity, this specific provision will be referred to simply as "the Civil Rights Act"). Second, Vote.org alleges the Wet Signature Rule violates the First and Fourteenth Amendments of the

---

[2] Prior to enactment of the Wet Signature Rule, a voter who chose to register by telephonic facsimile machine was required to mail a copy of the application to their registrar; however, the previous version did not require that the copy include an original, wet signature. Prior to amendment, § 13.143(d–2) stated: "For a registration application submitted by telephonic facsimile machine to be effective, a copy of the registration application must be submitted by mail and be received by the registrar not later than the fourth business day after the transmission by telephonic facsimile machine is received." 2013 Tex. Sess. Law Serv. Ch. 1178 (S.B. 910).

[3] Other cases have used the term "Wet Signature Rule" in analysis of other challenges to other provisions in the Texas Election Code. This Court uses this moniker limited to reference to Texas Election Code § 13.143(d-2), only, as that is the only statute challenged in this action.

U.S. Constitution by placing an undue burden on citizens' right to vote. Vote.org asserts its causes of action under 42 U.S.C. § 1983.[4] Vote.org requests preliminary and permanent injunction enjoining enforcement of the Wet Signature Rule and requests this Court declare "the Wet Signature Rule . . . and any other provision requiring a voter to sign an application form with an original, wet signature in order to register to vote violates . . . the Civil Rights Acts and violates the First and Fourteenth Amendments of the U.S. Constitution."

Ken Paxton, in his official capacity as the Attorney General of Texas, intervened in the suit and now acts as the lead party in asserting the Defendants' and Intervenors' position. The matter is now before the Court upon the parties' competing Motions for Summary Judgment. This Court held a status conference on May 18, 2022, during which the Court accepted limited argument on some of the issues presented. At the hearing, both parties agreed no additional hearing or argument is necessary, and the Court can decide and dispose of this matter upon submission of the summary-judgment briefs. The Court provided another opportunity for hearing, and the parties did not request further hearing. *ECF No. 141*. Consequently, the Court will only examine the request for permanent injunctive relief upon submission of the summary judgment briefs.

## DISCUSSION

### I.   STANDING

Texas first asserts this Court does not have subject matter jurisdiction over Vote.org's causes of action because Vote.org lacks standing, as it has no concrete injury, and Texas does not cause Vote.org's alleged injury. *ECF No. 108, pp. 8-16, 24-25; ECF No. 109, pp. 2-8, 11-13*.

---

[4] Section 1983 "provides a federal cause of action for the deprivation, under color of law, of a citizen's rights, privileges, or immunities secured by the Constitution and laws of the United States." *Livadas v. Bradshaw*, 512 U.S. 107, 132 (1994) (citation and internal quotation marks omitted).

Further, Texas argues Vote.org has no private cause of action under the Civil Rights Act because the statute only authorizes the Attorney General to bring suit. Finally, Texas argues Vote.org lacks statutory standing to sue on behalf of voters under § 1983. *Id*.

A party's standing is essential to a court's exercise of subject matter jurisdiction. *Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 348 (5th Cir. 1989). A Court must examine its jurisdiction at any stage of litigation. *Id*.

This Court already determined these same arguments and challenge to the Court's subject matter jurisdiction in its disposition of Texas's Motions to Dismiss for Lack of Jurisdiction. In that disposition, this Court held Vote.org does have organizational standing to assert this action. Specifically, this Court held Vote.org can bring an action under the Civil Rights Act and § 1983 because the Civil Rights Act does allow a private action, and an organization can allege personal injury under § 1983. *See ECF Nos. 49,70* (citing collection of cases recognizing a private right of action under the Civil Rights Act and § 1983). Texas repeats the same arguments as presented in the previously disposed Motions to Dismiss and fails to address the flaws in its argument that this Court identified. Texas does not cite any new authority or support for these same arguments it presented in the Motions to Dismiss. *See id*.

Consequently, to the extent Texas seeks summary judgment of this action based upon Vote.org's lack of standing, summary judgment is denied for the same reasons provided in disposition of the Motions to Dismiss.

## II.     FAILURE TO STATE A CLAIM

Intervenor Defendants Lupe Torres and Terrie Pendley assert additional argument that the Civil Rights Act does not provide Vote.org with a cause of action because Vote.org failed to

allege any racial discrimination. For this reason, Torres and Pendley assert Vote.org fails to state a claim under the Civil Rights Act, and they are entitled to judgment as a matter of law.

This Court addressed this same argument which cited the same supporting cases, in its disposition of Torres and Pendley's Motion to Dismiss. *See ECF Nos. 49,70*. In addressing this argument, this Court held it did not find support for the contention that Vote.org's cause of action challenging the Civil Rights Act failed because it did not allege racial discrimination. *See id*. This Court explained why Torres and Pendly's cited cases, *Broyles v. Texas*, 381 Fed.Appx. 370 (5th Cir. 2010) and *Kirksey v. City of Jackson*, 663 F.2d 659 (5th Cir. 1981), do not apply in this action and concluded, "the Court cannot find that a failure to allege racial motivation bars [Vote.org's] claim."

Consequently, to the extent Lupe Torres and Terrie Pendley seek summary judgment on any portion of this action based upon Vote.org's failure to state a claim due to their failure to assert racial discrimination, summary judgment is denied.

## III.    COMPETING MOTIONS FOR SUMMARY JUDGMENT

### LEGAL STANDARD

#### 1.  Summary Judgment

Summary judgment is appropriate if the record shows "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *see also Rodriguez v. Pacificare, Inc.*, 980 F.2d 1014, 1019 (5th Cir. 1993).[5] "A fact is material only if its resolution would affect the outcome of the action." *Wiley v. State Farm Fire & Cas. Co.*, 585 F.3d 206, 210 (5th Cir.

---

[5] Although 2010 amendments replaced "issue" with "dispute," the summary judgment standard "remains unchanged." Fed. R. Civ. P. 56 advisory committee notes (2010 amend.).

2009). A genuine dispute for trial exists if the record taken as a whole could lead a reasonable trier of fact to find for the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Bayle v. Allstate Ins. Co.*, 615 F.3d 350, 355 (5th Cir. 2010). Because there must be a genuine dispute of material fact, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Anderson v. Liberty Lobby*, *Inc.*, 477 U.S. 242, 247-48 (1986).

The moving party bears the initial burden of informing the court of the basis for the motion and of identifying those portions of the record which demonstrate the absence of a genuine dispute of material fact or the appropriateness of judgment as a matter of law. *Celotex Corp.*, 477 U.S. at 323; *Adams v. Travelers Indem. Co.*, 465 F.3d 156, 163 (5th Cir. 2006). The movant is not required to negate the elements of the nonmovant's case but may satisfy its summary judgment burden by demonstrating the absence of facts supporting specific elements of the nonmovant's cause(s) of action. *Little v. Liquid Air Corp.*, 37 F. 3d 1069, 1075, 1076 n.16 (5th Cir. 1994).

To satisfy this burden, the moving party must provide affidavits or identify any portion of the pleadings, discovery or admissions that demonstrate the absence of a triable dispute of material fact. *Celotex Corp.*, 477 U.S. at 323; *Rodriguez*, 980 F.2d at 1019. "If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014)(internal citation omitted). To be entitled to summary judgment on its own cause of action, a plaintiff must show there is no genuine dispute of material fact and establish each element of its cause of action as a matter of law. *Fontenot v. Upjohn Co*., 780 F.2 1190, 1194 (5th Cir. 1986).

If the movant carries its initial burden, the burden shifts to the nonmovant to present competent summary judgment evidence showing the existence of a genuine dispute of material fact. *Matsushita*, 475 U.S. at 586-87; *see also* Fed. R. Civ. P. 56(c). Upon the shifting burden, "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown v. City of Houston, Tex.*, 337 F.3d 539, 541 (5th Cir. 2003); *see also Eason v. Thaler,* 73 F.3d 1322, 1325 (5th Cir. 1996). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which this evidence raises a genuine dispute of material fact. *Ragas v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998)(citing *Forsyth v. Barr,* 19 F.3d 1527, 1537 (5th Cir. 1994)).

### 2.  Permanent Injunction

A court may grant a permanent injunction upon a properly supported Motion for Summary Judgment. *Calmes v. United States*, 926 F. Supp. 582, 591 (N.D. Tex. 1996). To obtain permanent injunction, a plaintiff must demonstrate "(1) actual success on the merits; (2) a substantial threat that failure to grant the injunction will result in irreparable injury; (3) the threatened injury outweighs any damage that the injunction may cause the opposing party; and (4) the injunction will not disserve the public interest." *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 391 (2006); *O'Connor v. Smith*, 427 Fed. Appx. 359, 365 (5th Cir. 2011). The decision to grant or deny a permanent injunction is grounded in principles of equity and is in the discretion of the district court. *eBay Inc.*, 547 U.S. at 391; 15 U.S.C. § 1116(a).

# ANALYSIS

## 1. Success on the Merits

### A. Clarification of the Scope of Analysis

All parties in this case, through their argument in the briefs and orally during hearing, attempt to expand the scope of this case to be a challenge to the prohibition of any electronic submission of the voter registration form in Texas. However, as revealed by the clear terms of § 13.143(d-2), which is the only Election Code provision challenged in this action, the challenges presented are limited in scope to the tender of a voter registration form by telephonic facsimile machine. Consequently, the Court's analysis and review of the legality and constitutionality of the "Wet Signature Rule" as defined for this action applies only to a registrant who chooses to submit a voter registration form by telephonic facsimile machine, not to the much broader scope of tender of a voter registration form through any electronic submission. A telephonic facsimile machine, sometimes referred to as "Fax" or "telefax," by definition, is "equipment which has the capacity to transcribe text or images, or both, from paper into an electronic signal and to transmit that signal over a regular telephone line onto paper." LawInsider.com/definitions. When using a telephonic facsimile machine, the transmission is sent to a telephone number connected to a printer or other output device. *See* Cornell Law School Legal Information Institute, citing 42 U.S.C.A. § 227(a)(3) (ruled unconstitutional on other grounds, *Barr v. Am. Ass'n of Political Consultants, Inc.*, 140 S. Ct. 2335, 2341 (2020)); *see also* Wikipedia.

Similarly, Vote.org seeks to expand declaratory relief by requesting the Court declare "any other provisions requiring a voter to sign an application form with an original, wet signature in order to register to vote violates . . . the Civil Rights Acts and the First and Fourteenth

Amendments of the U.S. Constitution." This expanded request for declaratory relief goes beyond Vote.org's statutory challenge, and therefore, is not properly before the Court.

Finally, the parties present the same arguments in their own Motions for Summary Judgments as they present in their Responses to the opposing parties' Motions for Summary Judgment. Consequently, this Court will analyze all parties' arguments pertinent to each cause of action, while applying the pertinent summary-judgment burdens of proof to each party.

## B. CAUSE OF ACTION ONE: CIVIL RIGHTS ACT; 52 U.S.C. § 10101(a)(2)

Section 1971 of the Civil Rights Act provides:

> [n]o person acting under color of law shall . . . deny the right of any individual to vote in any election because of an error or omission on any record or paper relating to any application, registration, or other act requisite to voting, if such error or omission is not material in determining whether such individual is qualified under State law to vote in such election.

52 U.S.C. § 10101(a)(2).

Framing this language of the Civil Rights Act as it pertains to this action: Texas cannot deny a citizen the right to vote based upon the citizen's failure to provide a wet signature on a copy of the registration form in conjunction with a voter registration form submitted previously by telephonic facsimile machine, if this wet signature is not material in determining whether the registrant is qualified to vote. *See id.* In this context, the Court must look to Texas law to determine the requirements to be qualified to vote.

Texas Election Code 11.002(a) enumerates the requirements to be *qualified* to vote:

> In this code, "qualified voter" means a person who: (1) is 18 years of age or older; (2) is a United States citizen; (3) has not been determined by a final judgment of a court exercising probate jurisdiction to be: (A) totally mentally incapacitated; or (B) partially mentally incapacitated without the right to vote; (4) has not been finally convicted of a felony or, if so convicted, has: (A) fully discharged the per-

son's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or (B) been pardoned or otherwise released from the resulting disability to vote; (5) is a resident of this state; and (6) *is a registered voter*….

Tex. Elec. Code Ann. § 11.002(a) (2011)(emphasis added). Following § 11.002(a)(6), to be *eligible to register* to vote, Texas Election Code 13.001 equally requires:

a person must: (1) be 18 years of age or older; (2) be a United States citizen; (3) not have been determined by a final judgment of a court exercising probate jurisdiction to be: (A) totally mentally incapacitated; or (B) partially mentally incapacitated without the right to vote; (4) not have been finally convicted of a felony or, if so convicted, must have: (A) fully discharged the person's sentence, including any term of incarceration, parole, or supervision, or completed a period of probation ordered by any court; or (B) been pardoned or otherwise released from the resulting disability to vote; and (5) be a resident of the county in which application for registration is made….

Tex. Elec. Code Ann. § 13.001 (2011). To register to vote in Texas, a registrant must fill out and submit a voter registration form to a voter registrar. Tex. Elec. Code Ann. § 13.002 (2021). A voter "registration application must be in writing and signed by the applicant." Tex. Elec. Code § 13.002(b). A registrant may submit a voter registration form to the county registrar by personal delivery, by mail, or by telephonic facsimile machine. Tex. Elec. Code § 13.002(a).

### 1. Summary Judgment Arguments

Texas[6] contends it is entitled to summary judgment on the Civil-Rights-Act cause of action on two bases: (1) the requirement that a telephonic-facsimile registrant also submit a copy of the original form with a wet signature is material to determination of the registrant's qualification[7] to vote, and (2) no registrant is denied the right to vote even if a registration form submitted by telephonic facsimile is rejected. *ECF No. 108, pp. 24-25; ECF No. 109, pp. 9-13*. With regard

---

[6] All Defendants and Intervenor Defendants join in these arguments or present the same arguments in their own Motion for Summary Judgment.

[7] Texas and Vote.org use the terms "qualification to vote" and "eligibility to vote" interchangeably. However, the Civil Rights Act specifically focuses on a voter's qualification to vote. For this reason, the Court will presume the parties' use of "eligibility" is intended to mean "qualification." The Court will analyze only whether the Wet Signature Rule is material to determining a registrant's qualification to vote.

to the first argument, Texas argues it is well settled that "requiring a signature" on a registration form is material to determining whether a voter is qualified to vote. Following this precedent, because the Wet Signature Rule simply requires those who register by telephonic facsimile machine provide a signature, it is material to helping Texas elections administrators determine whether a registrant is qualified to vote. Texas contends there are two reasons that "requiring a signature" is material to the determination of a registrant's qualification to vote. First, the governmental interest in the prevention of fraud requires that elections administrators have a means to verify the registrant is the person they claim to be. Second, a signature is an affirmative confirmation by the registrant that the information provided is correct.

Next, Texas contends the Wet Signature Rule does not deny any person the right to vote, and therefore, cannot be determined to violate the Civil Rights Act. Because a telephonic-facsimile registrant is informed and permitted to resubmit the proper registration form if it is deemed incomplete due to the omission of a wet signature, Texas contends no voter is denied the right to vote, and therefore, the Civil Rights Act cannot be implicated.

In response, and in its own Motion for Summary Judgment, Vote.org contends it is entitled to summary judgment declaration that the Wet Signature Rule violates the Civil Rights Act because a wet signature is not material to determination of an individual's qualification to vote. *ECF No. 111, pp. 8-12*. Specifically, Vote.org contends the requirement that a prospective voter who seeks to register by telephonic facsimile machine also submit an additional wet signature on the original voter registration form does not relate to any of the statutory requirements to be qualified to vote. The Wet Signature Rule does not support Texas's asserted interest in preventing fraud or ensuring the registrant's identity or accuracy of information provided.

13

### 2.  Substantive Analysis

**Texas's Motion for Summary Judgment**

**Argument One: Whether the Wet Signature Rule Denies the Right to Vote**

As a preliminary argument, Texas contends the Wet Signature Rule does not deny a citizen the right to vote because any registrant who submits an incomplete voter registration form is notified and given an opportunity to cure any deficiency. Because it does not deny anyone the right to vote, the Wet Signature Rule cannot violate the Civil Rights Act.

Vote.org attempts to reframe the injury necessary to implicate the Civil Rights Act to a direct denial of the right to vote. However, a restriction need not be directly fatal to the right to vote to be violative of the Civil Rights Act. The language of the statute states a voter cannot be denied the right to vote because of "an error or omission on any . . . paper relating to any application, registration, or other act requisite to voting. . . ." 52 U.S.C. § 10101(a)(2). Based upon the specific language of the statute, Texas's argument that the Civil Rights Act cannot be violated by the Wet Signature Rule must fail.

Further, the undisputed facts defeat this argument. The parties do not dispute that registration applications containing a graphic image of a signature are deemed incomplete and rejected because they are not "signed by the applicant." *ECF No. 111, App. p. 89 (Elfant Dep. 67:6-20), p. 201 (Callanen Resp. to Pl.'s Interrogs. No. 1)*; *ECF No. 108, App. (Garza Dep. pp. 85-88)*. Defendant Michael Scarpello admits, "[i]f you can't register to vote, you can't vote. [The Wet Signature Rule] makes it harder to register to vote …" *ECF No. 111, App. p. 182 (Scarpello Dep., at p. 101:2-8)*.

If a registrant does not timely cure the deficiency by providing a form with a wet signature, the registrant will not be registered to vote, and therefore, cannot vote. *ECF No. 111, App.*

*p. 265 (Elfant Dep. 172:5-175:4), p. 86 (Callanen Dep. pp. 248), 190-91 (Scarpello Dep, pp. 184:15-186:14)*. Even if the registrant has the opportunity to cure any deficiencies, a registrant who is unable to print or provide postage for the form or one who is unable to personally deliver the form will not be registered to vote, and therefore, cannot vote. *See id*.

Consequently, the Wet Signature Rule imposes an avenue to deny a citizen the right to vote due to "an error or omission on any record or paper relating to any application, registration, or other act requisite to voting." *See* 52 U.S.C. § 10101(a)(2). This error or omission of a wet signature on a supplemental copy of the voter registration form of a registration submitted by telephonic facsimile machine necessarily implicates and poses the potential threat to a citizen's right to vote. Although the registrant has multiple choices of the manner in which to submit a voter registration form, the Wet Signature Rule may still be violative of the Civil Rights Act.

For this reason, Texas's preliminary argument must fail, and the Court will determine whether the Wet Signature Rule violates the Civil Rights Act.

**Argument Two: Whether Texas's Signature Requirement Violates the Civil Rights Act**

First, in making this argument, Texas attempts to expand the scope of the Court's scrutiny of § 13.143(d-2) to be whether Texas's requirement of a signature on the voter registration form is violative of the Civil Rights Act. Through these semantics, Texas attempts to subtly strengthen the importance of § 13.143(d-2) by re-framing Vote.org's challenge to be contesting Texas's "requirement of a signature." However, Vote.org is not challenging Texas's requirement of a signature on the voter registration form, nor is Vote.org disputing or challenging the importance of the requirement that the registration form submitted by telephonic facsimile machine be "signed by the applicant." Through its challenge in this action, Vote.org does not attempt to eliminate the requirement that a voter registration form contain a signature. Instead, Vote.org

challenges the requirement that a registration form submitted by telephonic facsimile machine also be supplemented with a mailed or delivered copy of the registration form containing a wet signature. For this reason, to the extent Texas argues the requirement of a signature on the voter registration form is material to determination whether the applicant is qualified to vote, this argument is misguided and must fail under the facts and challenges of this action.

The true issue of this matter is Texas seeks to conform the meaning of the term "signed by the applicant," as required in Texas Election Code § 13.002[8], to be "wet signature," only, when applied in the context of a voter registration form submitted by telephonic facsimile machine.

Nowhere in the Texas Elections Code is "signed by the applicant" defined or limited to a wet signature, only. Elsewhere in the Election Code, a graphic image of a signature is accepted to render a registrant's form complete. The parties do not dispute that Texas accepts voter registration forms submitted electronically through the Texas Department of Public Safety (DPS). *ECF No. 111, App. p. 92 (Elfant Dep. pp. 107-108), p. 139 (Ingram Dep. pp. 81-82).* To provide this service to those requesting it, DPS combines the registrant's personal information provided through the DPS services rendered with an image of the applicant's signature that is held within DPS's database. *Id.* Texas accepts these electronic submissions as complete registration and holds the voter's signature electronically when submitted through this avenue. *Id.* Texas does not require those who register through DPS to also provide a hard copy of the registration form with a wet signature. *See id.*

In other Texas statutory provisions, a graphic image of a signature is widely accepted as true and correct and the binding inscription of the signatory. For example, under the Texas Business & Commerce Code, "(a) A record or signature may not be denied legal effect or enforcea-

---

[8] A voter "registration application must be in writing and signed by the applicant." Tex. Elec. Code § 13.002(b).

bility solely because it is in electronic form; (b) A contract may not be denied legal effect or enforceability solely because an electronic record was used in its formation; (c) If a law requires a record to be in writing, an electronic record satisfies the law; (d) If a law requires a signature, an electronic signature satisfies the law." Tex. Bus. & Comm. Code Ann. § 322.007(d); Uniform Electronic Transactions Act. Similarly, electronic signatures are accepted in executing an advance health directive, Tex. Health & Safety Code § 166.011, signing a divorce decree, *see Bartee v. Bartee*, No. 11-18-0017-CV, 2020 WL 524909, at *3 (Tex. Ct. App. Jan. 31, 2020), and closing on real property, Tex. Prop. Code Ann. § 12.0013.

In making this argument that "signed by the applicant" can only mean a wet signature, Texas provides abundant evidentiary and legal support for the conclusion that a signature is important and vital to determine a voter's qualification to vote; however, Texas fails to show or explain why a *wet signature* is required in this instance to determine the registrant's qualification to vote. Texas fails to demonstrate why the signature provided on the registration form submitted by telephonic facsimile is any less reliable than the wet signature provided on the later submitted copy. Texas also does not provide evidence or argument to show how the required wet signature relates to any of the statutory enumerations for being qualified to vote. *See* Tex. Elec. Code § 11.002.

Texas argues the registrant's wet signature confirms the accuracy of information provided; however, the signature provided through telephonic facsimile machine must also provide this attestation.[9] Tex. Elec. Code Ann. § 13.122 (2006); *ECF No. 111, App. pp. 175-176 (Scarpello*

---

[9] Texas Election Code 13.122: (a) In addition to the other statements and spaces for entering information that appear on an officially prescribed registration application form, each official form must include: (1) the statement: "I understand that giving false information to procure a voter registration is perjury and a crime under state and federal law. . . . (13) a statement warning that a conviction for making a false statement may result in imprisonment for up to the maximum amount of time provided by law, a fine of up to the maximum amount provided by law, or both the imprisonment and the fine. . . .

*Dep. pp. 67, 75), p. 270 (Scarpello Answer to Int.), p. 115 (Hailey Dep. pp. 49-53), p. 97 (Elfant Dep. pp. 129-130).* Consequently, the voter submits effective attestation of the accuracy of the information provided through the registration form submitted by telephonic facsimile machine. Although Texas asserts "[a] signature" performs this function, Texas does not show or provide proof or legal support demonstrating these attestations of accuracy are only valid or effective through submission of a wet signature.

Texas also asserts its interest in fraud prevention makes the Wet Signature Rule material to determining a registrant's qualification to vote. Again, Texas provides no evidence or support for its argument that a wet signature is necessary to prevent voter registration fraud. Texas provides no credible evidence that a wet signature submitted by mail or personal delivery is less susceptible to fraud than the imaged counterpart submitted by telephonic facsimile machine. The other forms of voter registration through submission of the postcard by mail or personal delivery also carry the same risk of voter fraud, as it is undisputed that no one checks the registrant's identity to verify accuracy, or lack of fraud, and the registration form is only reviewed for completeness upon receipt. *ECF No. 111, App. p. 176 (Scarpello Dep. pp. 74-78), p. 97 (Elfant Dep. pp. 129-30).* Consequently, Texas does not provide evidence or support to demonstrate a wet signature on a copy of the registration form is any different or more reliable than the signature submitted by telephonic facsimile machine or that this wet signature is material to determination whether a voter is qualified to vote.

Texas asserts that errors during the implementation of Vote.org's web app in 2018 supports the Wet Signature Rule and the conclusion that a wet signature is material in determining a registrant's qualification to vote. However, the summary judgment evidence provided demonstrates these errors have been corrected. *ECF No. 108, App. p. 269 (Elfant Dep. 188:8-15).* Re-

gardless, even if the glitches in Vote.org's web app still exist, the Texas Elections Administrators have authority to reject any voter registration form if it is illegible or otherwise incomplete, regardless of the manner of submission. If telephonic facsimile transmission is poor or renders an illegible form or signature, or is subject to other omission, then according to Elections Code and Texas's own admission, the form shall be rendered incomplete and the registrant provided an opportunity to cure the omissions or errors. *ECF No. 111, App. p. 161 (Lopez Dep. pp. 124-125), Paxton App. at 426, Ingram Dep. at 202:13–203:1; ECF No. 108 App. p. 206 (Callanen Dep. at 248:3–7); pp. 514-15 (Lopez Dep. at 124:17–125:7).* The Wet Signature Rule is not necessary to impart this authority to reject a registration form that is illegible or otherwise incomplete, regardless of the avenue in which it is submitted.

For these reasons, Texas fails to prove entitlement to summary judgment on the Civil Rights Act cause of action as a matter of law. Texas's Motion for Summary Judgment on this cause of action is denied.

**Vote.org's Motion for Summary Judgment**

In support of its Motion for Summary Judgment on this cause of action, Vote.org provides evidence of the county registrars' admission that they do not use any signature to check for "fraud" or to verify identity during the registration process. *ECF No. 111, App. pp. 178-79 (Scarpello Dep. 84:3-85:1), 166 (Pendley Dep. 70:14-18, 71:18-21).* The registrars do not compare the telephonic-facsimile submitted signature against the wet signature, nor do they use either signature for identity verification purposes. *ECF No. 108, App. p. 248 (Elfant Dep. p. 104:19-22), p. 177 (Scarpello Dep. p. 77:4-6), p. 108 (Garza Dep. p. 103:19-22).* The signature provided during the registration phase is saved electronically for comparison if a voter fraud investigation is initiated or undertaken. *ECF No. 111, App. pp. 78-79 (Callanen Dep. at pp. 111-115).*

At the registration stage, the Elections Administrator checks only that the registrant provided all required information, provided attestation of the accuracy of this information, and the form is otherwise "complete." *Id. (Callanen Dep. at pp. 159:2-6); (Garza Dep., at 107:17-108:1)*. The Election Administrators do not exercise any discretion or substantive review upon submission of a voter registration form other than to ensure it is complete and legible. *Id*.; *ECF No. 111, App. p. 176 (Scarpello Dep. pp. 74-78), p. 97 (Elfant Dep. pp. 129-30)*.

Vote.org provides summary judgment evidence that when a registrant submits a registration form by postcard, the Elections Administrator scans the postcard, including the voter's signature and stores this information electronically. The original postcard with the wet signature is not saved or stored for later use. *ECF No. 111, App. p. 81 (Callanen Dep. p. 135)*.

Vote.org provides summary judgment evidence that when a registrant registers to vote through any form or through DPS, the voter information and electronic signature is sent to the Texas Secretary of State. *ECF No. 111, App. pp. 92-93 (Elfant Dep., at 107:13-108:17, 109:22-110:8)*. The Secretary of State checks that individual's "last name, the date of birth, and whatever number provided, either their driver's license number or [S]ocial [Security number]" against the information in the DPS database. *ECF No. 111, App. (Ingram Dep. at pp. 70:6-71:17); ECF No. 108*, *App. pp. 92-93 (Elfant Dep., at 107:13-108:17, 109:22-110:8)*. If those fields match, the voter is assigned a voter-unique identifier (VUID). *Id*. Neither the Secretary nor any Election Administrator uses a "wet" signature to determine a registrant's qualification to vote. *Id.* The Secretary of State's office does not have access to the registrant's "wet" signature. *ECF No. 111, App. (Torres Dep. at pp. 44:19-45:14, 70:5-8); (Pendley Dep. at pp. 50:14-51:5, 52:16-53:5, 75:5-16); (Ingram Dep., at pp. 74:1-13)*.

Vote.org presents summary judgment evidence showing that when county officials (not Elections Administrators) investigate reported or suspected voter fraud, they use the voter's electronically-stored registration signature as an exemplar of the voter's signature. *ECF No. 111, App. pp. 78-79 (Callanen Dep. at pp. 111-115)*. Of consequence, in this investigation, the investigating official uses a scanned image of the registration signatures, not the original, wet signature. *Id.* at 81-82, *(Callanen Dep. at pp. 135-136, 139)*. Any fraud investigation is conducted completely electronically using computer programs to compare exemplars of the voter's signatures provided upon registration and at the previous six times of voting. *Id.* At no time is an original, wet signature used to conduct a voter-fraud investigation. *See id.*

Bexar County Elections Administrator Jackie Callanen testified that voters' signatures change significantly over time and even at various times of the day. Therefore, comparison of one signature at one point in time is not a sufficient exemplar for investigation purposes. *ECF No. 111, App. pp. 78-81 (Callanen Dep. pp. 112-115)*. Further, County Administrators testified they are aware of no instances in which a graphic image of a signature submitted by telephonic facsimile machine was used fraudulently on a registration application. *ECF No. 111, App. p. 133 (Ingram Dep. 218:13-219:5), p. 170 (Pendley Dep. 103:1-12, 104:2-12), p. 196 (Torres Dep. 98:10-13, 98:21-99:8)*.

Finally, Texas Election Code § 11.002 does not enumerate a wet signature on the voter registration form as one of the elements for being qualified to vote. *See* Tex. Elec. Code § 11.002 The attestation contained within the voter registration form confirms the registrant's compliance with all of the listed elements to be qualified. This attestation provides the verification that Texas needs to prevent voter fraud and confirm identity. The voter's signature on the voter registration form clearly confirms the attestations and qualification. While Section 13.002 does require the

registration form be "signed by the applicant" to affirm these attestations, this signature is not limited to a wet signature, only. The Court finds no legal support or provision defining a wet signature as the only valid indication of confirmation or attestation.

For these reasons, the Court concludes Vote.org provides sufficient summary judgment evidence and support to show, as a matter of law, the Wet Signature Rule, within the context of the facts and challenges in this case, is not material to determination whether a registrant is qualified to vote. Accordingly, Vote.org satisfies its summary judgment burden to establish the Wet Signature Rule violates § 1971 of the Civil Rights Act, codified at 52 U.S.C. § 10101. Vote.org's Motion for Summary Judgment on this cause of action is granted.

## C. CAUSE OF ACTION TWO: UNDUE BURDEN IN VIOLATION OF THE FIRST AND FOURTEENTH AMENDMENTS

### 1.    Summary Judgment Arguments

Vote.org brings this challenge to Texas Election Code § 13.143(d-2) alleging the requirement that a Texas citizen who registers to vote by telephonic facsimile machine also mail or deliver a copy of the registration form with an original, wet signature places an undue burden on Texas citizens' fundamental right to vote, thereby violating the First and Fourteenth Amendments of the United States Constitution.

Texas first contends it is entitled to summary judgment in its favor on this undue-burden constitutional challenge to Texas Election Code § 13.143(d-2) because the Wet Signature Rule does not implicate Texas citizens' right to vote. Second, Texas contends the Wet Signature Rule must be upheld as constitutional because the burden created, if any, on a Texas citizen's right to vote is minimal and significantly outweighed by Texas's compelling state interest to uphold election integrity and prevent fraud. Texas contends Vote.org has no credible summary judgment

evidence of a burden on voters created by the Wet Signature Rule, and the fact that Texans have numerous other avenues to register to vote, necessarily demonstrates Texas's compelling interests easily outweigh any *de minimus* burden created by the Wet Signature Rule.

Vote.org contends in its Response and in its own Motion for Summary Judgment, there is long-standing precedent holding imposition of procedural requirements to the voting registration process burdens the right to vote. Vote.org contends the Wet Signature Rule violates the First and Fourteenth Amendments because it unlawfully and unnecessarily impedes a citizen's right to vote by presenting an unnecessary obstacle to the registration process, and the State reveals no state interest that is sufficiently weighty to justify the burden it imposes upon Texas voters.

### 2. Substantive Analysis

**Texas's Motion for Summary Judgment**

**Argument One: Whether the Wet Signature Rule Implicates a Texas Citizen's Right to Vote**

Texas contends its citizens have other means to register to vote, and therefore, the Wet Signature Rule does not implicate (or deny) their fundamental right to vote. Because the Wet Signature Rule "does not take anything away from anybody," but, instead, adds to the means already available to register to vote, "the Court should conclude that the fundamental right to vote is not implicated by [Vote.org's] claims and uphold HB 3107 as constitutional on this ground alone."[10]

Texas attempts to create a new initial test for determination whether a statute places an undue burden on a citizen's right to vote, contending if another method for voter registration ex-

---

[10] To the extent Texas argues Vote.org's constitutional claim fails because Vote.org does not possess a right to cast a ballot, this Court will not address this argument again.

ists, then a citizen's right to vote cannot be implicated. Texas presents no applicable case law to support the application of this test or rationale.

The focus in this analysis is whether the challenged regulation impermissibly burdens a citizen's fundamental right to vote. It is true, as Texas contends, that a court may not reach this analysis unless the challenged statutory provision touches upon, implicates, or is connected to, a citizens' fundamental right to vote; however, the fact that another method for voter registration exists does not automatically suggest a regulation does not implicate the right to vote.

The Court concludes established precedent clearly supports the conclusion that any restriction placed upon a citizen's ability to register to vote necessarily implicates the citizen's fundamental right to vote. Each provision of a code, "whether it governs the registration and qualifications of voters, the selection and eligibility of candidates, or the voting process itself, inevitably affects—at least to some degree—the individual's right to vote. . . ." *Anderson v. Celebrezze,* 460 U.S. 780, 788 (1983); *see also* 52 U.S.C. § 20501(a)(3) (Congressional findings); *see Stringer v. Pablos*, No. SA-16-CV-257-OG, 2020 WL 532937, at *7 (W.D. Tex. Jan. 30, 2020) (overruled on other grounds); *Mi Familia Vota v. Abbott*, 497 F. Supp. 3d 195, 219 (W.D. Tex. 2020).

Here, the Wet Signature Rule imposes a new requirement upon a citizen who chooses to register to vote by telephonic facsimile machine. Fundamentally, registration to vote is necessary for a Texas citizen to be qualified to vote. Tex. Elec. Code § 11.002(a). Consequently, registration to vote necessarily implicates a citizen's fundamental right to vote, and similarly, any requirement placed upon voter registration imposes a burden on the right to vote. *Burdick v. Takushi*, 504 U.S. 433, 434 (1993); *Anderson*, 460 U.S. at 788. The central question is whether the burden is undue. Regardless of whether there are other means to register, this imposition created

by the Wet Signature Rule implicates a Texas citizens' fundamental right to vote. *Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 788.

Aside from the statutory provisions requiring a voter to be registered to vote to be qualified to vote, as demonstration of this implication on the right to vote, Vote.org presents summary judgment evidence of the deposition of Defendant Michael Scarpello, stating, "[i]f you can't register to vote, you can't vote. [The Wet Signature Rule] makes it harder to register to vote …" *ECF No. 111, App. p. 182 (Scarpello Dep. p. 101:2-8).*

For this reason, Texas's argument that it is entitled to summary judgment on the basis the Wet Signature Rule does not implicate a Texas citizen's right to vote must fail as a matter of law. Texas's Motion for Summary Judgment on this basis is denied.

**Argument Two: Whether the Wet Signature Rule Places an Undue Burden upon the Right to Vote**

"[V]oting is of the most fundamental significance under our constitutional structure." *Burdick*, 504 U.S. at 433. However, even in light of this magnitude, the right to vote in any manner is not absolute. *Id.* "Under the federalist structure of the United States, the states are responsible for regulating the conduct of their elections. It is well recognized that state regulations will invariably affect the individual's right to vote…." *Voting for Am., Inc. v. Steen*, 732 F.3d 382, 387 (5th Cir. 2013) (quoting *Anderson*, 460 U.S. at 788). However, state regulated election laws may not unduly burden the right to vote. *Burdick*, 504 U.S. at 434. *Steen*, 732 F.3d at 387. Consequently, when an election statute is challenged, a Court must examine and balance a state's interest in regulating elections against any burden upon the citizens' right to vote. *Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 789.

The rigorousness of a court's inquiry into the propriety of a state election law, that is, whether strict-scrutiny review, rational-basis review, or some intermediate standard applies, de-

pends upon the extent to which a challenged regulation burdens First and Fourteenth Amendment rights (here, the right to vote). *Burdick*, 504 U.S. at 434; *Anderson*, 460 U.S. at 788. At one end of the spectrum, regulations imposing severe burdens on the plaintiffs' constitutional rights are subject to strict scrutiny and must be narrowly tailored and advance a compelling state interest. *Burdick*, 504 U.S. at 434. At the other end, "[l]esser burdens . . . trigger less exacting review, and a state's 'important regulatory interests' will usually be enough to justify 'reasonable, non-discriminatory restrictions.'" *Timmons v. Twin Cities Area New Party,* 520 U.S. 351, 358 (1997); *Steen*, 732 F.3d at 387–88.

In challenges that impose a burden that falls between either end of these boundaries, i.e. severe and slight, the court must weigh "the character and magnitude of the asserted injury" to the plaintiffs' fundamental right to vote against "the precise interests put forward by the State as justifications for the burden imposed." *Anderson*, 460 U.S. at 789; *Burdick*, 504 U.S. at 433–34; *Tashjian v. Republican Party of Connecticut*, 479 U.S. 208, 213-214 (1986)*.* The court must not only determine the legitimacy and strength of each of the state's asserted interests; it also must consider 'the extent to which the state's asserted interests make it necessary to burden the plaintiff's rights.'" *Burdick,* 504 U.S. at 434 (quoting *Anderson,* 460 U.S. at 78); *Steen*, 732 F.3d at 387–88. This weighing-of-interests is not an exacting standard. *Burdick*, 504 U.S. at 434 ; *Anderson*, 460 U.S. at 788-89). "However slight the burden may appear, ... it must be justified by relevant and legitimate state interests sufficiently weighty to justify the limitation." *Crawford v. Marion Cty. Elec. Bd*, 553 U.S. 181, 191 (2008); *Stringer*, 2020 WL 532937 at *7.

The Court turns now to the task of identifying the burden that the Wet Signature Rule places upon a Texas citizen's right to vote weighed against Texas's asserted interest in its implementation.

### i. Burden: Character and Magnitude of Asserted Injury to Texas Citizens' Right to Vote

The Court first considers "the character and magnitude of the asserted injury to the rights protected by the First and Fourteenth Amendment." *Anderson*, 460 U.S. at 789.

The Wet Signature Rule requires a telephonic-facsimile registrant to also print the form, sign it, and deliver or mail it to the registrar. While the only requirement added by Section 13.143(d-2) is the wet signature, this requirement, coupled with the existing requirement of printing and mailing or delivering the form, negate any reason or motivation for registering by telephonic facsimile. Effectively, the Wet Signature Rule nullifies the option to register by telephonic facsimile machine because it renders the option identical to the option of submitting a voter registration postcard. In this instance, however, the registrant must have a printer and must pay for postage or pay for transportation. This effective nullification of an avenue to register to vote places a burden upon potential voters.

In addition, the registrant must ensure the printed copy with the wet signature is received within four business days of transmission. The lasting advantage, and only useful purpose, of registration by telephonic transmission is effective submission before the voting registration deadline. However, should a voter choose telephonic-facsimile transmission through Vote.org's web app or other means to meet the registration deadline, the requirement that it be received by the county registrar within four days of transmission poses a risk of disenfranchisement if the voter is unable to drive and deliver, or the USPS is unable to timely deliver their additional, signed form. By requiring a registrant take the additional step of ensuring its wet-signature copy of the registrant form, which contains the same statutorily-required information submitted

27

through telephonic facsimile, be received by the County Registrar within four days, the Court finds the Wet Signature Rule imposes a burden upon Texas citizens' right to vote.

Finally, the Wet Signature Rule creates an additional step to register to vote by telephonic facsimile machine. By forcing registrants who choose to register by telephonic facsimile transmission to print and sign the same form and to incur additional expense of printing and posting, the Court finds the Wet Signature Rule imposes a burden upon Texas citizens' right to vote. *See also ECF No. 111, App. pp. 115-116 (Hailey Dep. pp. 49-50).*

While, as discussed, a citizen's right to vote is of most fundamental significance, the Court's focus remains on the character and magnitude of the asserted injury to Texas citizens' right to vote caused by the Wet Signature Rule. This injury is limited to registration to vote by telephonic facsimile, only, not to the right to vote as a whole. In this limited context, the burden imposed by the Wet Signature Rule is more than slight, or "minimal" and "miniscule," as the State contends.

Consequently, the court must assess Texas's asserted interests in establishing this wet signature requirement to determine if the state's interests are sufficiently weighty to justify the imposition upon its citizens' voting rights.

### ii.    Texas's Asserted Interests

Texas asserts it "has a compelling interest in protecting the integrity of its election process." Because "[i]naccuracies in voter registration are a significant problem," Texas contends it holds "a weighty 'interest in preventing voter registration fraud,' and other conduct that frustrates the operation of the electoral process by inserting confusion and disruption." Texas asserts Vote.org's web app creates this confusion and disruption, so the Wet Signature Rule "helps maintain accurate voting rolls and combat the use of fraudulent signatures." To achieve this in-

terest, Texas contends it investigates alleged voter fraud "by analyzing signatures on voter registration records," and authorities could not achieve this purpose without "good exemplars of a person's physical signature." Because Vote.org's web app "produced images of signatures that were in many cases illegible" and unacceptable, Texas contends the submission of only electronic signatures through the web app defeats this weighty interest. Finally, Texas contends Vote.org's use of electronic signatures disrupts public confidence in election results.

"A State indisputably has a compelling interest in preserving the integrity of its election process." *Eu v. San Francisco County Democratic Central Comm.*, 489 U.S. 214, 231 (1989). "Confidence in the integrity of our electoral processes is essential to the functioning of our participatory democracy. Voter fraud drives honest citizens out of the democratic process and breeds distrust of our government. Voters who fear their legitimate votes will be outweighed by fraudulent ones will feel disenfranchised." *Purcell v. Gonzalez*, 549 U.S. 1, 4 (2006).

Accordingly, the Court concludes Texas asserts valid interests.

### iii.    *Anderson-Burdick* Weighing

Countering Texas's compelling interest in preventing voter fraud and protecting election integrity is the strong interest in the exercise of the fundamental right to vote. *Dunn v. Blumstein*, 405 U.S. 330, 336 (1972). Given the asserted state interest in imposing the Wet Signature Rule and the burden this regulation places upon Texas citizens' right to vote, the Court will weigh the asserted justifications against the burden. *Burdick*, 504 U.S. at 434; quoting *Anderson*, 460 U.S. at 789. Upon review of the arguments, evidence and law, this Court found the burden on Texas citizens' right to vote to be more than slight, noting the Wet Signature Rule "must be justified by relevant and legitimate state interests sufficiently weighty to justify the implementation." *Crawford*, 553 U.S. at 191; *Stringer*, 2020 WL 532937 at *7.

**Prevent Voter Registration Fraud**

While it is indisputable that Texas has a valid interest in preventing voter fraud and protecting the integrity of its election process, the Court must examine the extent to which the state's asserted interests make it necessary to burden citizens' right to vote to determine the constitutional validity of § 13.143(d-2). *Burdick,* 504 U.S. at 434; *Anderson,* 460 U.S. at 789; *Steen*, 732 F.3d at 387–88. Under these facts, the Court concludes Texas fails to present argument or summary judgment evidence to demonstrate how the Wet Signature Rule achieves or supports this interest to show the regulation serves any useful or justifiable purpose. Consequently, Texas fails to show its asserted interest to prevent voter fraud, though valid, justifies the burden upon citizens' right to vote.

First and foremost, to prevent fraud and ensure receipt of good exemplars of voters' signatures, Texas always holds the authority and ability to reject a voter registration application if the signature is illegible or unacceptable or the application is otherwise incomplete, whether submitted by telephonic facsimile machine, hand delivery, or a posted card. The Wet Signature Rule does not provide Texas any means to prevent fraud based simply upon the submission of a wet signature.

Next, Texas defendants admit they do not compare the wet signature provided against the earlier submitted telephonic facsimile. *ECF No. 111, App. (Callanen Dep. at pp. 159:2-6); (Garza Dep., at 103: 19-22, 107:17-108:1), p. 176 (Scarpello Dep. pp. 74-78), p. 97 (Elfant Dep. pp. 129-30)*. To the contrary, even without the Wet Signature Rule, Texas still holds the authority to prevent voter fraud by rejecting any voter registration form in good faith on the basis of an illegible signature.

The fact that Vote.org's web app at one time, or could possibly in the future, produce illegible or unacceptable images of signatures does not justify the Wet Signature Rule. Texas has the means and procedural protocol to reject a voter registration application submitted by telephonic facsimile machine due to illegible signature outside of the stricture of the Wet Signature Rule. This argument must fail because Texas's asserted interest is not valid (in this context), and therefore, does not make it necessary to burden its citizens' right to vote in this way. Consequently, no weight will be given to this asserted state interest.

**Election Code Requirement that Potential Voter Provide a Signature**

Texas attempts to change the focus of this analysis and tip the scale in its favor by arguing in general terms of the "signature" requirement under Texas election law. Texas attempts to change the crux of its interest into simple requirement of a "signature," and characterize the Wet Signature Rule as in line with this longstanding and understood requirement that a potential voter must provide "a signature." Specifically, a voter "registration application must be in writing and signed by the applicant." Texas Election Code § 13.002(b). However, the term "signed by the applicant" is not defined by the Election Code, nor is the term specifically limited to wet signature, only, anywhere in the Election Code. As discussed previously, Texas points to neither federal nor state law which limits the signature requirement to wet signatures, and the Court finds none.

Further, in contradiction to its argument, as discussed, Texas utilizes electronic signatures captured by the Texas DPS for every Texan who uses that agency's online system for driver's license renewal or change of address. *ECF No. 111, App. (Callanen Dep. p. 132:5), (Elfant Dep., p. 104:5-14), Scarpello Dep. p. 60:6-8).* Defendants admit they do not use a wet signature at any time or with any form of voter registration submission to determine a voter's qualification to

31

vote. *ECF No. 111, App. (Elfant Dep., pp. 103:15-104:9, 107:13-108:17, 109:22-110:8), (Torres Dep. pp. 44:19-45:14, 70:5-8); (Pendley Dep. pp. 50:14-51:5, 52:16-53:5, 75:5-16); (Ingram Dep. pp. 74:1-13, 81:8-220, 82: 1-3); (Callanen Dep. p. 131:8-14).* Texas officials do not use the signature on a voter registration card submitted in any form other than to verify that the voter submitted one, or that it exists. Defendants admit they do not use any signature submitted during the registration process for identity verification purposes. *ECF No. 111, App. (Scarpello Dep. pp. 74:20-75:9, 76:19-22, 77:4-6, 85:19-86:6), (Torres Dep., at 61:13-22, 68:3-14); (Elfant Dep., at 104:19-22, 129:10-21), (Pendley Dep., at 71:18-72:2, 85:21-86:9).*

The Court relies upon the same analysis and reasoning discussed previously to conclude Texas's general argument that a signature is required under the Texas Election Code must also fail, and no weight will be given to this asserted interest.

### Investigate Voter Fraud

Similarly, Texas's argument that the Wet Signature Rule supports its interest in investigating voter fraud must fail. Texas contends it requires "good exemplars of a person's physical signature" to investigate alleged voter fraud. However, as stated, the need to possess "good exemplars" may be achieved without the Wet Signature Rule, as Texas must examine any voter registration application upon its receipt to determine whether it is complete, which includes analysis of the sufficiency of the signature provided. Contrary to Texas's arguments, authorities can achieve this justification without the Wet Signature Rule, and this purpose can be achieved whether the signature is submitted through telephonic facsimile machine or with an original, wet signature. Further, in contradiction to this argument, Texas obtains a "good exemplar" of some voter's signatures through electronic submission of signatures when those voters chose to register through Texas DPS upon renewal of their driver's license.

Finally, as discussed previously, Texas officials investigate voter fraud by comparing the electronically-stored exemplar of the voter's signature at registration with the voter's signature at various times while voting. *See ECF No. 111, App. pp. 78*-82, *(Callanen Dep. at pp. 111-115, 135-136, 139), p. 92 (Elfant Dep. pp. 107-108), p. 139 (Ingram Dep. pp. 81-82), (Garza Dep. p. 85:17, 103:19-22)*. Any fraud investigation is conducted completely electronically using computer programs to compare these electronically-stored exemplars of the voter's signatures. *See id.; see also id. at (Scarpello Dep. pp. 84:3-85:1); (Pendley Dep. pp. 70:14-18, 71:18-21)*. At no time is an original, wet signature used to conduct a voter-fraud investigation. *See id.*; *see also App. (Scarpello Dep. pp. 153:17-154:3), (Callanen Dep. at pp. 1345-136, 139-140), (Elfant Dep. p. 253:10-16), (Torres Dep. p. 75:6-22)*. Because Texas stores voters' signatures electronically and uses the electronic exemplar to investigate voter fraud, this argument fails to justify the Wet Signature Rule.

For these reasons, Texas fails to show the Wet Signature Rule supports or works to protect its interest of investigating voter fraud to justify its imposition, and no weight will be given to this asserted interest.

## Conclusion

The restriction on voter registration created by the Wet Signature Rule imposes a burden on the fundamental right to vote that warrants the demonstration of a sufficiently weighty state interest to justify the imposition. Texas does not present any valid justification for imposing the Wet Signature Rule nor does it show how the Wet Signature Rule supports or fulfills its asserted interests. Because the asserted justifications are not legitimate, and therefore carry no weight, there can be no state interest that outweighs the burden imposed upon Texas voters. Therefore, the Court concludes § 13.143(d-2) unduly burdens Texas citizens' fundamental right to vote in

violation of the First and Fourteenth Amendments. *Burdick,* 504 U.S. at 434; quoting *Anderson,* 460 U.S. at 789; *Steen*, 732 F.3d at 387–88. Consequently, even though Texas holds weighty interest in protecting election integrity, because Texas fails to demonstrate the Wet Signature Rule serves or supports these asserted interests, it provides no valid justification to burden citizens' right to vote.

For these reasons, Vote.org satisfies its summary judgment burden to establish § 13.143(d-2) places an undue burden on Texas citizens' fundamental right to vote in violation of the First and Fourteenth Amendments. Vote.org's Motion for Summary Judgment on this cause of action is granted.


## IV.    PERMANENT INJUNCTION

### 1.  Success on the Merits

As determined, Vote.org satisfied the first element for entitlement to permanent injunction by establishing success on the merits on both causes of action.

### 2.  Threat of Irreparable Injury

"[A]n injury is irreparable only if it cannot be undone through monetary remedies." *Deerfield Medical Center v. Deerfield Beach*, 661 F.2d 328, 338 (5th Cir. 1981). The denial of constitutional rights "for even minimal periods of time constitutes irreparable injury justifying" injunctive relief. *Id.* Consequently, Vote.org's demonstration of deprivation of the constitutional right to vote and violation of the Civil Rights Act satisfies the requirement that Vote.org demonstrate an irreparable harm. This factor supports permanent injunction.

### 3.  Weighing of the Harms

Balancing the parties' interests, the Court finds in favor of Vote.org. Texas is not harmed by enjoinment of its enforcement of the Wet Signature Rule. Vote.org demonstrated the injuries caused by failure to grant injunctive relief will outweigh any damage that permanent injunction may cause the Defendants and Intervenors. *See Sells v. Livingston*, 750 F.3d 478, 480 (5th Cir. 2014). Consequently, this factor supports injunctive relief.

### 4.   Whether the injunction will disserve the public interest

Injunctions protecting constitutional freedoms are always in the public interest. *Texans for Free Enter. v. Tex. Ethics Comm'n*, 732 F.3d 535, 539 (5th Cir. 2013). Therefore, under these facts and conclusions outlined, injunction protects the fundamental right to vote. Consequently, this factor supports permanent injunction.

### Conclusion

For the reasons stated, the Court concludes each element of permanent injunction is satisfied as a matter of law, with no issues of fact.

### V.      DECLARATORY RELIEF

Summary judgment may be granted in actions for declaratory judgments, as in other actions, when there are no disputes as to any material fact and when either party is entitled to judgment as a matter of law. Under the Declaratory Judgment Act (DJA) a court "may declare the rights of and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201. The DJA offers the court broad discretion to decide whether it will decline the party's request for a declaratory judgment, provided it explains its actions. *Mission Ins. Co. v. Puritan Fashions Corp.*, 706 F.2d 599, 601 (5th Cir. 1983); *DM Arbor Court, Ltd. v. City of Houston*, No. CV H-18-1884, 2021 WL 4926015, at *9 (S.D. Tex. Oct. 21, 2021).

Vote.org requests the Court declare "the Wet Signature Rule as it appears in Section 14 of HB 3107 (amending Texas election Code § 13.143(d-2)), and any other provisions requiring a voter to sign an application form with an original, wet signature in order to register to vote, violate Section 1971 of the Civil Rights Act of 1964 and the First and Fourteenth Amendments to the U.S. Constitution."

For the reasons stated, the Court declares the provision contained in Texas Election Code § 13.143(d-2) that requires "a copy of the original registration application *containing the voter's original signature* must be submitted by personal delivery or mail" violates Section 1971 of the Civil Rights Acts and violates the First and Fourteenth Amendments of the U.S. Constitution by placing an undue burden on Texas citizens' right to vote. To this extent, Vote.org's request for declaratory relief is granted.

However, Vote.org's request exceeds the scope of its challenge and this Court's review. Consequently, Vote.org's request for declaratory relief that "any other provision which requires a voter to sign an application form with an original, wet signature in order to register to vote" violates the Civil Rights Act and the First and Fourteenth Amendment is denied.

**CONCLUSION**

For the reasons stated, Texas's Motions for Summary Judgement on both of Vote.org's causes of action *(ECF Nos. 108,109)* are DENIED. Vote.org's Motion for Summary Judgment *(ECF No. 111)* on its cause of action asserting violation of the Civil Rights Act, 52 § 10101, and its cause of action asserting violation of the First and Fourteenth Amendments is GRANTED.

The Court declares the provision contained in Texas Election Code § 13.143(d-2) that requires "a copy of the original registration application containing the voter's original signature

must be submitted by personal delivery or mail" violates Section 1971 of the Civil Rights Acts and violates the First and Fourteenth Amendments of the U.S. Constitution by placing an undue burden on Texas citizens' right to vote.

Under the equitable powers of this Court IT IS ORDERED that Defendants, Intervenors, and their officers, agents, servants and employees are permanently ENJOINED and RE-STRAINED from enforcing the Wet Signature Rule contained within Texas Election Code 13.143(d-2), that is, these parties may not require a voter registrant who submits a voter registration form by telephonic facsimile machine to also provide a copy of the original registration application containing the voter's original signature.

It is so ORDERED.
SIGNED this 16th day of June, 2022.


JASON  PULLIAM
UNITED STATES DISTRICT JUDGE